**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Douglas HOFLIN, Defendant–Appellant.**

**No. 86–3071.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1989.

Decided July 14, 1989.

Allen R. Bentley, Bukey & Bentley, Seattle, Wash., for defendant-appellant.

John A. Bryson, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before HUG, NORRIS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Douglas Hoflin appeals his felony conviction for aiding and abetting the disposal of hazardous waste during his tenure as Director of Public Works for the City of Ocean Shores, Washington, in violation of 42 U.S.C. § 6928(d)(2)(A). Hoflin also appeals his misdemeanor conviction for aiding and abetting the burial of sludge at the Ocean Shores sewage treatment plant, contrary to the conditions of the plant's operating permit in violation of 33 U.S.C. § 1319(c)(1).

Hoflin contends his conviction under 42 U.S.C. § 6928(d)(2)(A) requires proof that he knew there was no permit for disposal

of the waste, and that the jury instructions omitted this element of the offense. He also contends that the jury instructions were inadequate to define the misdemeanor offense created by 33 U.S.C. § 1319(c)(1). We affirm.

## BACKGROUND

Hoflin was the Director of the Public Works Department for Ocean Shores, Washington ("City"), from 1975 to 1980, when he left for personal reasons. In 1982, he returned as Assistant Director until he again became Director in 1983. As Director, Hoflin's responsibilities included supervising maintenance of roads and operation of a sewage treatment plant. The criminal prosecution in this case arose from the disposal of two types of waste generated by the City: paint left over from road maintenance and sludge removed from the kitchen of the City's golf course. These wastes were buried at the City's sewage treatment plant.

### A. *Leftover Road Paint*

Hoflin and his successor, John Hastig, bought 3,500 gallons of paint for road maintenance from 1975 through 1982. As painting jobs were finished, 55–gallon drums which had contained paint were returned to the Public Works Department's yard. Drums which were empty were used elsewhere or given away. Fourteen drums which still contained paint remained. In the fall of 1982, Hastig moved these drums inside a building located on the Public Works Department yard to keep the paint from freezing. The fire marshal, however, ordered Hastig to return the drums to the outdoors because of the risk of explosion. Hoflin was aware that the drums had to be moved because of the flammable nature of their contents.

When Hoflin again became Director in 1983, he told Fred Carey, director of the sewage treatment plant, that he planned to dispose of the drums by burying them at the plant. Carey replied that burying the drums might jeopardize the plant's NPDES certificate,[1] but Hoflin said he was going to do it anyway.

Hoflin instructed an employee to haul the paint drums to the sewage treatment plant and bury them. Hoflin claimed he told the employee to bury only drums in which the contents had solidified, but the employee testified that Hoflin gave no such instruction. Around August, 1983, employees of Hoflin's department took the drums to the treatment plant, dug a hole on the grounds of the plant, and dumped the drums in. Some of the drums were rusted and leaking, and at least one burst open in the process. The hole was not deep enough, so the employees crushed the drums with a front end loader to make them fit. The refuse was then covered with sand.

Almost two years later, in March 1985, Carey reported the incident to state authorities. After inspecting the plant, the state authorities referred the matter to the Environmental Protection Agency ("EPA"). EPA employees recovered the drums, but because several of the drums had no lids or had been crushed, paint had already leaked into the soil. Ten of the fourteen drums recovered contained liquid material. The EPA tested samples taken from these ten drums. It found the highest flash point for the samples to be 65 Fahrenheit. Under the Resource Conservation and Recovery Act of 1976 ("RCRA"), substances with flash points of 140 Fahrenheit or less are deemed to be hazardous. (*See* 40 C.F.R. § 261.21). Such hazardous materials can only be disposed of at facilities with EPA permits. No such permit had been obtained.

---

**1.** The National Pollutant Discharge Elimination System ("NPDES") certificate is an operating permit issued to the City pursuant to the Clean Water Act, 33 U.S.C. § 1342. Any person seeking to discharge a pollutant directly into the navigable waters of the United States must obtain an NPDES certificate either from the Administrator of the Environmental Protection Agency ("EPA") or from a state agency authorized by the EPA. *See generally E.P.A. v. California ex rel. State Water Resources Control Board,* 426 U.S. 200, 205–08, 96 S.Ct. 2022, 2025–26, 48 L.Ed.2d 578 (1976).

### B. Kitchen Sludge from the Golf Course Restaurant

The City owns a golf course which houses a restaurant. Periodically, the grease trap in the kitchen septic system is pumped out and the sludge is taken to the sewage treatment plant. Because this sludge contains so much grease, it kills the bacteria necessary for the treatment process and has to be specially burned. In September 1984, three truck loads of this sludge were transported to the City's sewage treatment plant, but Carey refused to accept delivery. Carey told Hoflin that accepting the sludge could jeopardize the plant's NPDES certificate. Hoflin told him to take it anyway and to bury it rather than treat it.[2] The sludge was then dumped into a depression on the grounds of the plant and covered with a backhoe. This burial violated the plant's NPDES permit.

### C. The Indictment

The grand jury indicted Hoflin on three counts. Count I charged him with conspiracy to dispose of hazardous waste without having obtained a permit, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2. Count II charged Hoflin with disposing of the paint without a permit in violation of 18 U.S.C. § 2, the Resource Conservation and Recovery Act of 1976, as amended ("RCRA"), 42 U.S.C. § 6928(d)(2)(A) ("section 6928(d)(2)(A)"), and regulations issued pursuant to RCRA. Count III charged Hoflin with disposing of the kitchen sludge in violation of 18 U.S.C. § 2 and 33 U.S.C. § 1319(c)(1). A jury found Hoflin guilty on Counts II and III, and not guilty on Count I. The district court suspended the imposition of sentence and placed Hoflin on two years probation.

### DISCUSSION

#### A. Section 6928(d)(2)(A)

■ On appeal from his conviction on Count II, Hoflin contends he did not know the City did not have a permit to dispose of the paint. He argues knowledge a permit was lacking is an element of the offense charged in Count II, and that failure to so instruct the jury was reversible error. "Because it is a question of law whether the district court's instructions to the jury misstated the elements of a statutory crime, we review this claim *de novo*." *United States v. Douglass*, 780 F.2d 1472, 1475 (9th Cir.1986) (citations omitted).

Hoflin's challenge to his conviction on Count II focuses on subsection (2)(A) of 42 U.S.C. § 6928(d) (1982).[3] Section 6928(d) provides in pertinent part:

(d) Criminal penalties
  Any person who—
  . . . .
  (2) *knowingly* treats, stores or disposes of any hazardous waste identified or listed under this subchapter either—
  (A) without having obtained a permit under section 6925 of this title. . . .; or
  (B) in *knowing* violation of any material condition or requirement of such permit;
  . . . .
  shall, upon conviction, be subject to [fines, imprisonment or both]. (emphasis added).

42 U.S.C. § 6928(d)(2)(A) and (B).

It is Hoflin's position that "knowingly" in subsection (2) modifies both subsections (A) and (B). Under this interpretation, knowledge becomes an essential element of

2. The City's sewage treatment plant, run by Carey, has an NPDES permit for treating and discharging sewage. The plant operators treat waste water with bacteria in clay-lined lagoons to break down organic materials, and then discharge the waste into ground waters. Section 54 of the NPDES permit requires the permit holder to provide all known, available and reasonable methods of treatment to prevent leachate from its solid waste material from entering surface waters or adversely affecting state ground waters.

3. Section 6928(d)(2)(A) was amended in October 1984, after the events in this case. The amendment changed the beginning clause in subsection (A) "without having obtained a permit under section 6925 of this title (or section 6926 of this title in the case of a State program) . . ." to read "without a permit under this subchapter . . .".

the crime defined by section 6928(d)(2)(A), and Hoflin could not be convicted on Count II without proof that he knew no permit had been obtained. He correctly points out that the jury was not given an instruction to this effect. This argument requires us to interpret section 6928(d)(2)(A) and decide whether knowledge of lack of a permit is an essential element of the crime the statute defines.

Statutory interpretation begins with the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The absence of the word "knowing" in subsection (A) is in stark contrast to its presence in the immediately following subsection (B). The statute makes a clear distinction between non-permit holders and permit holders, requiring in subsection (B) that the latter knowingly violate a material condition or requirement of the permit. To read the word "knowingly" at the beginning of section (2) into subsection (A) would be to eviscerate this distinction. Thus, it is plain that knowledge of the absence of a permit is not an element of the offense defined by subsection (A). The statute is not ambiguous. On the contrary, "[t]he language is plain and the meaning is clear. Our statutory construction inquiry, therefore, is at an end." *United States v. Patterson*, 820 F.2d 1524, 1526 (9th Cir.1987) (citing *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (citation omitted)).

Hoflin relies on *United States v. Johnson & Towers, Inc.*, 741 F.2d 662 (3d Cir. 1984), to argue that this interpretation of the statute is unreasonable and could not have been intended by Congress. In *Johnson & Towers*, the Third Circuit held that employees could be subjected to criminal prosecution under section 6928(d)(2)(A) only if they knew or should have known their employer had failed to obtain the required permit. *Johnson & Towers*, 741 F.2d at 664–65. In remanding the case to the district court for trial, the Third Circuit in *Johnson & Towers* stated that the necessary knowledge element could be inferred from proof that the individuals charged with violating section 6928(d)(2)(A) had "responsible positions with the corporate defendant," presumably meaning that based on the positions they held in the company it could be inferred they either knew of should have known whether a permit had been obtained.

The government suggests that *Johnson & Towers* can be distinguished on the ground that the positions the defendant employees held in that case differed substantially from the position Hoflin held in the present case. In *Johnson & Towers* the responsibilities of the defendant employees had not been established. The case had not yet gone to trial, and the court of appeals stated there were "inconsistent descriptions of [the defendant employees'] responsibilities." *Johnson & Towers*, 741 F.2d at 670. In contrast, Hoflin was the City's Director of Public Works. Surely, the government argues, he should have known whether the City had the necessary permit. But this is the problem. Under this approach, Hoflin's knowledge, or lack of it, would have been a question for the jury, and an appropriate jury instruction would have been required.

The inability to distinguish *Johnson & Towers* is further demonstrated by that court's stated basis for its decision. The *Johnson & Towers* court based its decision squarely upon its determination that a knowledge element had to be read into section 6928(d)(2)(A). The court stated that notwithstanding the fact that 42 U.S.C. § 6928(d) (1982) was a regulatory "public welfare statute," in which it would be reasonable to "read [ ] the statute without any *mens rea* requirement," it would not do so. It reasoned that:

Treatment, storage or disposal of hazardous waste in violation of any material condition or requirement of a permit must be "knowing," since the statute explicitly so states in subsection (B). It is unlikely that Congress could have intended to subject to criminal prosecution those persons who acted when no permit had been obtained irrespective of their knowledge (under subsection (A)), but

not those persons who acted in violation of the terms of a permit unless that action was knowing (subsection (B)). Thus we are led to conclude either that the omission of the word "knowing" in (A) was inadvertent or that "knowingly" which introduces subsection (2) applies to subsection (A).

*Id.* at 668.

We respectfully decline to follow the Third Circuit's analysis in *Johnson & Towers.* Had Congress intended knowledge of the lack of a permit to be an element under subsection (A) it easily could have said so. It specifically inserted a knowledge element in subsection (B), and it did so notwithstanding the "knowingly" modifier which introduces subsection (2). In the face of such obvious congressional action we will not write something into the statute which Congress so plainly left out. This interpretation of subsection (A) is also consistent with the fundamental principle of statutory construction "that '[i]nterpretive constructions [of statutes] which would render some words surplusage ... are to be avoided.'" *In re Kun,* 868 F.2d 1069, 1071 (9th Cir.1989) (quoting *Pacific Mutual Life Ins. Co. v. American Guar. Life Ins. Co.,* 722 F.2d 1498, 1500 (9th Cir.1984)). To adopt the Third Circuit's interpretation of subsection (A) would render the word "knowing" in subsection (B) mere surplusage.

The result we reach is also consistent with the purpose of RCRA. The overriding concern of RCRA is the grave danger to people and the environment from hazardous wastes. Such wastes typically have no value, yet can only be safely disposed of at considerable cost. Millions of tons of hazardous substances are literally dumped on the ground each year; a good deal of these can blind, cripple or kill. *See* 1976 U.S. Code Cong. & Admin. News 6238, 6241 & 6249. Many of such substances are generated and buried without notice until the damage becomes evident. *Id.*

In *Wyckoff Co. v. E.P.A.,* 796 F.2d 1197 (9th Cir.1986), we stated that RCRA "was enacted to protect the national health and environment." *Id.* at 1198. Congress has determined that "hazardous waste presents, in addition to the problems association with non-hazardous waste, special dangers to health and requires a greater degree of regulation than does non-hazardous solid waste." 42 U.S.C. § 6901(b)(5). There can be little question that RCRA's purposes, like those of the Food and Drug Act, "... touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection." *United States v. Dotterweich,* 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943). As the Supreme Court stated in *United States v. International Minerals and Chemical Corp.,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed. 2d 178 (1971):

> Where ... dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation.

*Id.* at 565, 91 S.Ct. at 1702.

Finally, our conclusion is consistent with RCRA's goals and the treatment Congress gave "knowledge" in 42 U.S.C. § 6928(d)(2)(A) and (B) to achieve these goals. The statute requires knowledge of violation of the terms of a permit under subsection (B) but omits knowledge that a permit is lacking as an element of disposing of hazardous waste without a permit under subsection (A). There is nothing illogical about this. Knowledge of the location of hazardous waste, from its generation through its disposal, is a major concern of RCRA. *See* 1976 U.S.Code Cong. & Admin.News 6264. Those who handle such waste are, therefore, affirmatively required to provide information to the EPA in order to secure permits. Placing this burden on those handling hazardous waste materials makes it possible for the EPA to know who is handling hazardous waste, monitor their activities and enforce compliance with the statute. On the other hand, persons who handle hazardous waste materials without telling the EPA what they are doing shield their activity from the eyes of the regulatory agency, and thus inhibit the

agency from performing its assigned tasks. We hold that knowledge of the absence of a permit is not an element of the offense defined by 42 U.S.C. § 6928(d)(2)(A).

■ Hoflin next argues that even if knowledge of the absence of a permit is unnecessary to a prosecution under section 6928(d)(2)(A), the government nonetheless must prove, and the jury must be instructed, that the defendant knew the material being disposed of was hazardous. We agree.

Subsection (2) applies to anyone who "knowingly treats, stores or disposes of any hazardous waste...." The term "knowingly" modifies "hazardous waste" as well as "treats, stores or disposes of," and thus, one who does not know the waste he is disposing of is hazardous cannot violate section 6928(d)(2)(A). But this does not help Hoflin. The district court's instructions to the jury embodied this interpretation of the statute. The district court instructed the jury that in order to find Hoflin guilty on Count II, the jury had to find:

*First:* That [Hoflin] knowingly disposed of or commanded and caused others to dispose of chemical wastes on or about August 1, 1983;

*Second:* Defendant knew that the chemical wastes had the potential to be harmful to others or to the environment, or in other words, it was not an innocuous substance like water;

*Third:* The wastes were listed or identified by the United States Environmental Protection Agency ("EPA") as a hazardous waste pursuant to RCRA;

*Fourth:* The defendant had not obtained a permit from either EPA or the State of Washington authorizing the disposal under RCRA.

While these instructions did not use the word "hazardous" in paragraph Second, they did require the jury to find that Hoflin disposed of chemical waste which he knew "had the potential to be harmful to others or to the environment." This instruction was sufficient. *See United States v. Greer,* 850 F.2d 1447, 1450 (11th Cir.1988) (court's jury instructions for violation of

section 6928(d)(2)(A) were virtually identical to the first and second instructions above).

### B. *Section 1319(c)(1)*

Hoflin also appeals his misdemeanor conviction on Count III for burying sludge contrary to the NPDES permit conditions. He claims the jury was not properly instructed as to the elements of this offense. Because Hoflin challenges the formulation of the charge itself, we review his claim only for abuse of discretion. *United States v. Darby,* 857 F.2d 623, 624 (9th Cir.1988). Jury instructions are considered in the context of the whole trial to determine if they are misleading or inadequate. *Id.; United States v. Burgess,* 791 F.2d 676, 680 (9th Cir.1986). Trial judges are given substantial latitude in tailoring jury instructions. *Burgess,* 791 F.2d at 680.

■ Hoflin argues that the district court's *mens rea* instruction failed to refer to the burial of sewage, and the district court failed to instruct the jury they had to find it was sewage that Hoflin caused to be buried. The jury instructions on Count III did not specifically identify the burial of raw sewage as the factual basis of the alleged offense. However, the indictment and the evidence at trial described the burial in some detail. Further, the court's instruction defining "pollutant" and "sewage," when considered in light of the evidence presented at trial and the description in the indictment, was sufficient to cure the claimed deficiency. *See United States v. Powell,* 449 F.2d 994, 998 (D.C.Cir.1971) (reading of the indictment and statute, under these circumstances, makes unwarranted the conclusion that the jury did not fully understand integral parts of the crime).

■ Hoflin next asserts it was error that the jury was not instructed to find that the burial violated a condition of the NPDES permit. However, the instructions covered the permit in general terms, the permit itself had been introduced into evidence and the condition of the NPDES permit alleged to have been violated was read to the jury during the trial. Viewing both the

instructions and the trial as a whole, the jury was adequately instructed on this issue.

Hoflin also complains that none of the instructions informed the jury to find the alleged permit violation was one which "implemented 33 U.S.C. § 1311." The court, however, concluded as a matter of law that it did, and so instructed the jury. While Hoflin disagrees with the court's conclusion, he offers neither argument nor authority for the proposition that this was error. We conclude that the district court did not err in deciding, as a matter of law, that the alleged violation "implemented 33 U.S.C. § 1311."

Hoflin next claims the court erred by not instructing the jury to find that an NPDES permit was in effect at the time. We have considered this claim, and find it without merit. Uncontradicted testimony established that the terms of the permit were in effect at the time. This was not an issue at trial.

Overall, Hoflin argues that the court failed to give "intelligible and complete" instruction on the elements of Count III. We disagree. In the context of the whole trial, the instructions were adequate. The district court's instructions on Count III included the relevant provisions of the statute defining the offense, as well as further explanation of the NPDES program and the permit issued under that statute. Hoflin acknowledges that the statute itself is the best source for determining the elements of this offense due to the paucity of case law analyzing it. Yet he maintains that the court's instructions were fatally flawed, even though they included the statute itself.

Reliance on the wording of the statute is approved by this court when the wording is sufficiently clear. *Morris v. United States*, 156 F.2d 525, 529 (9th Cir.1946). We agree with the district court's reliance on the wording of this statute because we find the wording is sufficiently clear. Thus, the instructions, taken as a whole

and in the general context of the trial, were adequate.

AFFIRMED.