**UNITED STATES of America,**

v.

**Kenneth LAUGHLIN and John Donnelly, Defendants.**

**No. 91–CR–59.**

United States District Court,
N.D. New York.

June 20, 1991.

Frederick J. Scullin, U.S. Atty., N.D.N.Y., Syracuse, N.Y., for U.S.; Craig A. Benedict, Asst. U.S. Atty., of counsel.

Bond, Schoeneck & King, Syracuse, N.Y., for defendant Laughlin; George H. Lowe, of counsel.

Marris & Bartholomae, Syracuse, N.Y., for defendant Donnelly; William R. Bartholomae, of counsel.

## MEMORANDUM–DECISION & ORDER

MUNSON, Senior District Judge.

Before the court is the United States' motion in limine for a pre-trial determination regarding the elements of an offense under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6928(d)(2)(A). Also before the court is defendant Laughlin's motion to compel the government to furnish a bill of particulars and to identify documents which the government intends to use as evidence in chief at trial. The court heard oral argument on May 10, 1991 in Syracuse, New York.

## I. BACKGROUND

Defendants are charged in a twenty-seven count indictment with illegally storing and disposing of hazardous wastes without a permit in violation of RCRA, 42 U.S.C. § 6928(d)(2)(A) (Counts 1–11, 23, 26), and failing to report the release of hazardous substances in violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9603(a) & (b) (Counts 12–22, 24–25, 27). Because the government's motion in limine is directed only at that part of the indictment charging defendants with violations of RCRA, the court similarly limits its discussion to that portion of the indictment.

Defendant Kenneth Laughlin was the president and/or plant manager of GCL Tie Treating Inc. and defendant John Donnelly was one of GCL's supervisors. GCL's business involved treating unfinished railroad ties with creosote, a hazardous waste and substance, which is used as a wood preservative and pesticide to prevent rotting. The indictment charges that between April of 1986 and January 7, 1988 defendants knowingly stored and disposed of creosote, or caused such storage or disposal, at a location adjacent to the GCL site without a permit. (Counts 1–11). The indictment further alleges that on October 30, 1986 a pressure treating cylinder containing creosote burst and creosote was released, contaminating the adjacent soil. Thereafter, the soil was gathered into a large mound. Defendants are charged with knowingly storing the hazardous waste produced from this spill from January 30, 1987 through January 7, 1988. (Count 23). Finally, the indictment charges that on or about January 8, 1988 defendant Laughlin knowingly disposed of, or caused to be disposed, all of GCL's remaining creosote and hydrochloric acid without a permit. (Count 26). GCL ceased operations in January of 1988.

## II. DISCUSSION

### A. *Government's Motion In Limine*

42 U.S.C. § 6928(d)(2) provides as follows:

> Any person who—
>
> knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter—
>
> > (A) without a permit under this subchapter ...; or
> >
> > (B) in knowing violation of any material condition or requirement of such permit; or
> >
> > (C) in knowing violation of any material condition or requirement of any applicable interim status regulations or standards ...
>
> shall, upon conviction, be subjected to a fine of not more than $50,000 for each day of violation, or imprisonment not to exceed two years (five years in the case of a violation of paragraph (1) or (2)) or both.

The only issue raised by the government's motion in limine is whether in order to obtain a conviction under section 6928(d)(2)(A) it is necessary that the government prove that the defendants knew that it was illegal to treat, store, or dispose of hazardous waste without first obtaining a permit and also knew that GCL did not have a permit. The government argues that it is not required to prove such knowledge. All that must be demonstrated, the government contends, is the following:

> First: The defendants knowingly stored or disposed of or caused others to store or dispose of creosote or hydrochloric acid on or about the time periods set forth in the indictment;
>
> Second: Pursuant to RCRA, the creosote or hydrochloric acid was hazardous;
>
> Third: The defendants knew the creosote or hydrochloric acid had the potential to be harmful to others or the environment, or in other words, it was not an innocuous substance like water; and
>
> Fourth: Neither the defendants nor GCL had obtained a permit or interim status which authorized the storage or disposal of hazardous waste under RCRA.

Government's Motion In Limine, Document ("Doc.") 7, Exhibit 2 (Proposed Jury In-

struction). The government contends that its interpretation of section 6928(d)(2)(A) is supported by the plain language of the statute, general principles of statutory construction relating to public welfare offenses, and recent case law interpreting this section.

Defendants oppose the government's motion, asserting that the word "knowingly" as used in the statute modifies not only "treats, stores, or disposes of any hazardous waste", but "without a permit" as well. Therefore, defendants argue that their respective knowledge that they could not legally dispose of or treat hazardous wastes without a permit and knowledge that no such permit had been acquired are essential elements of a section 6928(d)(2)(A) violation.[1]

■ Before considering the parties' respective statutory construction arguments, the court will first address the defendants' procedural objection to the government's motion. Defendants argue that the government's motion is premature. The pre-trial determination that the government seeks, they contend, is more appropriately resolved at a jury charge conference near the close of the proof. In response, the government states that it is not presently seeking a determination of this court's entire jury instruction. Rather, it is merely seeking a ruling as to the essential elements of the charged RCRA offense so that the government will not be required to prove unnecessary facts at trial. While the court agrees with defendants that in most cases a jury charge conference near the close of the proof is the most appropriate time at which to address issues such as the one raised by the government's present motion, because of the unsettled state of the law with regard to the elements of a section 6928(d)(2)(A) violation the court concludes that it is proper to resolve this matter before trial. The court perceives no prejudice to defendants by such a pre-trial determination.

### 1. The Language of Section 6928(d)(2)(A)

The government argues that the plain language of section 6928(d)(2)(A) supports its interpretation of the elements of the offense. When the language of section 6928(d)(2)(A) is compared with the language of sections 6928(d)(2)(B) & (C), it is apparent, the government asserts, that Congress did not intend the word "knowingly" at the beginning of subsection (d)(2) to modify "without a permit" in subparagraph (A). The government further contends that its position is supported by an examination of the type of conduct that each of the subparagraphs is intended to prohibit. Subparagraphs (B) and (C) are designed to prohibit technical permit violations. If knowledge of the terms of the permit was not an element of the offense then there would be the potential for punishing innocent conduct. Subparagraph (A), however, is aimed at prohibiting more than technical permit violations. Its purpose, the government asserts, is to prevent any treatment, storage, or disposal of hazardous wastes unless a permit is acquired and any reasonable person would know that participating in these activities without a permit is illegal. Therefore, neither knowledge that a permit is required before treatment, storage, or disposal may occur nor knowledge that a permit had not been obtained are elements of an offense under subparagraph (A).

While the government's construction of the statute has much intuitive appeal it is clear that legislative drafters do not always operate with a high degree of linguistic precision. For this reason, the courts have warned against relying too heavily upon the punctuation and grammatical structure of a statute in discerning legislative intent. *See, e.g., United States v. Morris*, 928 F.2d 504, 507 (2d Cir.1991). This court, therefore, can not rely on the wording and structure of section 6928(d)(2)(A) alone in determining its essential elements.

### 2. Legislative History

The court turns to the legislative history of RCRA to ascertain whether additional

---

**1.** In a previous section 6928(d)(2)(A) prosecution, *United States v. Carr*, 88–CR–36, this court ruled that the government was required to prove that the defendant knew the waste materi-

insight into the question raised here can be found. RCRA was enacted by Congress in 1976 as "a multifaceted approach toward solving the problems associated with the 3–4 billion tons of discarded materials generated each year, and the problems resulting from the anticipated 8% annual increase in the volume of such waste." H.R.Rep. No. 94–1491, Part 1, 94th Cong.2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Admin.News pp. 6238, 6239. Congress specifically found that "hazardous waste presents, in addition to the problems associated with non-hazardous solid waste, special dangers to health and requires a greater degree of regulation than does non-hazardous solid waste." 42 U.S.C. § 6901(b)(5). Accordingly, one of Congress' objectives in enacting RCRA was "regulating the treatment, storage, transportation, and disposal of hazardous wastes which have adverse effects on health and the environment." 42 U.S.C. § 6902(4).

Beyond these broad policy statements, however, Congress provided little helpful insight into the precise question raised here. The only reference in the legislative history that the parties and the court have discovered merely indicates that "[t]he state of mind for all criminal violations under section 3008 is 'knowing.' The conferees have not sought to define 'knowing' for offenses under subsection (d); that process has been left to the courts under general principles." H.R.Conf.Rep. No. 96–1444, 96th Cong., 2d Sess. 29, *reprinted in* 1980 U.S.Code Cong. & Admin.News, p. 5038. Unfortunately, there is no expressed legislative guidance as to which elements of section 6928(d)(2)(A) the word "knowingly" modifies.

### 3. Case Law

The United States Court of Appeals for the Second Circuit has yet to rule on the elements of a section 6928(d)(2)(A) offense. Indeed, the only reported Court of Appeals cases which have directly addressed the question are *United States v. Johnson & Towers, Inc.,* 741 F.2d 662 (3d Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 321 (1985), and *United States v. Hoflin,* 880 F.2d 1033 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990).[2] Because of the limited case law presently available, the court will explore in some depth the holdings of these two cases.

#### a) *Johnson & Towers*

The Johnson & Towers corporation operated a plant for the repair and overhaul of large motor vehicles in Mount Laurel, New Jersey. Johnson & Towers and two of its employees were charged with, among other things, three counts of violating section 6928(d)(2)(A).[3] Specifically, the defendants were alleged to have knowingly treated, stored, and disposed of hazardous wastes without a permit by discharging degreasers into a trench adjacent to the plant which flowed into a tributary of the Delaware River. The individual defendants were charged both as principals and as aiders and abettors under 18 U.S.C. § 2.

Prior to trial, Johnson & Towers pled guilty to the RCRA counts. The individual defendants pled not guilty and then moved to dismiss. The district court dismissed that portion of the indictment charging them under section 6928(d)(2)(A) as principal violators but held that they could be held liable as aiders and abettors. The government appealed the district court's ruling that the individual defendants could not be held accountable as principal violators of section 6928(d)(2)(A).

The Third Circuit reversed the district court's order, holding that section 6928(d)(2)(A) covers employees as well as owners and operators of the facility who

al could not be legally disposed of without a permit and knew that no such permit had been obtained.

**2.** Although the government contends that several other cases support its interpretation of the statute, in none of those cases was the question presented here squarely before the court. *See, e.g., United States v. Sellers,* 926 F.2d 410 (5th Cir.1991); *United States v. Dee,* 912 F.2d 741 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991); *United States v. Protex Industries,* 874 F.2d 740 (10th Cir.1989); *United States v. Greer,* 850 F.2d 1447 (11th Cir.1988). Those decisions therefore are of limited precedential value.

**3.** The defendants were also charged with conspiracy under 18 U.S.C. § 371 and violating the Clean Water Act, 33 U.S.C. § 1319(c).

knowingly treat, store, or dispose of any hazardous waste. The case was therefore remanded to the district court. Given the remand, the Third Circuit deemed it necessary to provide the district court with further guidance as to the essential elements of a section 6928(d)(2)(A) offense.[4] The government in *Johnson & Towers* argued that the word "knowingly" only modified "treats, stores, or disposes" and therefore it was not required to prove that the individual defendants knew that the waste was hazardous or that there was no permit. The Third Circuit rejected the government's interpretation of the statute. The court easily disposed of the argument that knowledge that the waste is hazardous is not an element of the offense, stating: "[i]f the word 'knowingly' in section 6928(d)(2) referred exclusively to the acts of treating, storing or disposing, as the government contends, it would be an almost meaningless addition since it is not likely that one would treat, store or dispose of waste without knowledge of that action." *Johnson & Towers*, 741 F.2d at 668. The court therefore held that the government was required to prove that the defendants had knowledge that the waste was hazardous.[5]

Whether knowingly also modified "without a permit" presented a closer question for the court. The Third Circuit acknowledged that because RCRA is a "public welfare statute," there is Supreme Court precedent for interpreting the statute without any mental state. *Id.* (citing *United States v. Behrman*, 258 U.S. 280, 288, 42 S.Ct. 303, 304–05, 66 L.Ed. 619 (1922) and *United States v. Balint*, 258 U.S. 250, 252–54, 42 S.Ct. 301, 302–03, 66 L.Ed. 604 (1922)). However, the court opined that such an interpretation would be "arbitrary and nonsensical when applied to this statute." *Johnson & Towers*, 741 F.2d at 668.

The court reached this conclusion by a comparison of subparagraphs (A) and (B). Subparagraph (B) expressly requires that a violation of any material permit condition be "knowing." The court reasoned that

[i]t is unlikely that Congress could have intended to subject to criminal prosecution those persons who acted when no permit had been obtained irrespective of their knowledge (under subsection (A)), but not those persons who acted in violation of the terms of a permit unless that action was knowing (subsection B)). Thus we are led to conclude either that the omission of the word 'knowing' in (A) was inadvertent or that 'knowingly' which introduces subsection (2) applies to subsection (A).

*Id.* Therefore, the Third Circuit held that the government was required to prove that the individual defendants knew that Johnson & Towers was legally obligated to have a permit and also knew that Johnson & Towers did not have a such a permit.[6]

This court does not find the Third Circuit's analysis in *Johnson & Towers* to be persuasive. The Third Circuit's conclusion that it was "unlikely" that Congress could have intended to impose different knowledge requirements in subparagraphs (A) and (B) is unsupported by any explanation of why the court believed Congress could not have intended such a result. The court did not engage in any discussion of the harm that each subparagraph was designed to prevent. While the legislative history lacks a specific explanation for the absence of the word "knowing" in subparagraph (A), the government in this case suggests a plausible basis for the distinction between the subparagraphs. The government asserts that subparagraphs (B) and (C) were enacted to prevent violations of technical permit requirements such as, for example,

---

4. The district court held that the government was not required to prove that the defendants knew they were acting without a permit or that they were acting in violation of the law.

5. The government in this case recognizes that knowledge that the waste is hazardous is a required part of its proof. Other courts that have considered the question have reached the same conclusion. *See United States v. Dee*, 912 F.2d

at 745–46; *United States v. Hoflin*, 880 F.2d at 1039.

6. The court noted that "such knowledge, including that of the permit requirement, may be inferred by the jury as to those individuals who hold the requisite responsible positions with the corporate defendant." *Johnson & Towers*, 741 F.2d at 670.

the minimum distance that hazardous waste may be stored from a facility's property line. To impose criminal liability on a person for failing to comply with the specific terms of the permit even though he or she was unaware of such terms would be, the government contends, to criminalize innocent conduct. Subparagraph (A), by contrast, does not seek to proscribe technical permit violations. Rather, it is designed to prevent any treatment, storage, or disposal of hazardous waste unless a permit authorizing such treatment, storage, or disposal is obtained. Because of Congress' concern about the dangers that hazardous waste poses to public health and the environment it is not, in this court's opinion, at all unlikely that Congress concluded that the unpermitted treatment, storage, or disposal of hazardous waste presented such significant dangers that it warranted criminal liability regardless of whether the perpetrator was aware that a permit was legally required and knew that no such permit had been obtained.

Whether Congress intended to draw this distinction when it drafted subparagraphs (A) and (B) is unclear. It is, however, a plausible interpretation. Thus, it is not as obvious to this court as it was to the Third Circuit in *Johnson & Towers* that Congress intended the knowledge requirements of subparagraphs (A) and (B) to be identical. Moreover, this court is also unpersuaded by the Third Circuit's additional conclusions, which it considered flowed from its attempt to divine Congress' intent; namely, that the omission of the word "knowing" in subparagraph (A) either was inadvertent or that the use of the word "knowingly" at the beginning of subsection (d)(2) extended to subparagraph (A). If the omission of the word "knowing" at the beginning of subparagraph (A) was inadvertent it certainly would be a simple defect to remedy. Congress has yet to do so despite the fact that RCRA has been amended on four separate occasions. *See* Pub.L. No. 95–609, 92 Stat. 3079 (1978); Solid Waste Disposal Act Amendments of 1980, Pub.L. No. 96–482, 94 Stat. 2334 (1980); Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98–616, 98 Stat. 3221 (1984); Superfund

Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 (1986). Significantly, these amendments have included changes in the wording of section 6928(d)(2)(A). *See* Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98–616, § 232(a)(2)(B), 98 Stat. 3221 (1984) (substituting "this subchapter" for "section 6925 of this title (or section 6926 of this title in the case of a state program)"). Thus, to attribute Congressional inadvertence to the absence of the word "knowingly" in subparagraph (A) is, in the language of the Third Circuit, unlikely.

Similarly, the Third Circuit's alternative conclusion is not well reasoned. If Congress intended the word "knowingly" at the beginning of subsection (d)(2) to extend to subparagraph (A), it becomes difficult to explain why Congress specifically included the word "knowingly" at the beginning of subparagraphs (B) and (C). Either "knowingly" at the beginning of subsection (d)(2) applies to each of the subparagraphs or to none at all. In order to read the statute as the Third Circuit in *Johnson & Towers* did, however, it is necessary to find either that "knowingly" at the beginning of subsection (d)(2) extends only to subparagraph (A) but not (B) or (C), or that the use of "knowing" in subparagraphs (B) and (C) is redundant. The first interpretation would require a tortured reading of the statute as there is no principled basis for concluding that "knowingly" extends to subparagraph (A) but not subparagraphs (B) or (C). The second interpretation would entail a violation of a fundamental canon of statutory interpretation, namely, that the words of a statute are intended to have meaning. *See Kungys v. United States*, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988) (noting that it is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant"); *Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702, 706 (2d Cir.1987) (holding that "we will not interpret a statute so that some of its terms are rendered a nullity").

For all these reasons, this court finds the Third Circuit's analysis in *Johnson & Tow-*

*ers* to be unpersuasive and therefore accords little weight to its interpretation of section 6928(d)(2)(A).

### b) *United States v. Hoflin*

From 1975 until 1980 Douglas Hoflin served as the Director of the Public Works Department for Ocean Shores, Washington. In 1982 Hoflin returned to the Department as its Assistant Director and in 1983 again became Director. Hoflin was charged in a three count indictment with, among other things, disposing of paint without a permit in violation of section 6928(d)(2)(A).[7] The indictment claimed that Hoflin instructed an employee to bury 3500 gallons of paint left over from road construction at the city's sewage treatment plant without a permit. A jury found Hoflin guilty on the RCRA count.[8]

On appeal to the Ninth Circuit, Hoflin argued that knowledge of the absence of a permit was a required element of the offense and the district court's failure to so instruct the jury warranted reversal of his conviction.[9] Defendant asserted that the word "knowingly" in subsection (d)(2) modified both subparagraphs (A) and (B). The Ninth Circuit upheld Hoflin's conviction, holding that knowledge of the absence of a permit is not an element of the offense under section 6928(d)(2)(A). In reaching this conclusion, and expressly declining to follow the Third Circuit's analysis in *Johnson & Towers*,[10] the Ninth Circuit first noted the distinction between the absence of the word "knowing" in subparagraph

(A) as compared to subparagraph (B). The court held that

> [t]o read the word "knowingly" at the beginning of section (2) into subsection (A) would be to eviscerate this distinction. Thus, it is plain that knowledge of the absence of a permit is not an element of the offense defined by subsection (A). The statute is not ambiguous. On the contrary, "[t]he language is plain and the meaning is clear. Our statutory construction inquiry, therefore, is at an end."

*Hoflin*, 880 F.2d at 1037 (citation omitted). The court also deemed its construction of the statute to be in conformity with the purpose and goals of RCRA, namely, of protecting the public and the environment from hazardous wastes. Finally, the court found no inconsistency in Congress' determination to impose a knowledge element in subparagraph (B) but not in subparagraph (A). In this regard the court reasoned that "persons who handle hazardous waste materials without telling the EPA what they are doing shield their activity from the eyes of the regulatory agency, and thus inhibit the agency from performing its assigned tasks." *Id.* at 1039. For these reasons, the court held that proof that defendant knew of the absence of a permit was not required.

Although this court disagrees with the Ninth Circuit's conclusion that section 6928(d)(2)(A) is unambiguous, *cf. Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985),[11] the court

---

**7.** Defendant was also charged with conspiracy to dispose of waste without a permit under 18 U.S.C. §§ 371 & 2, and violating the Clean Water Act, 33 U.S.C. § 1319(c)(1).

**8.** Defendant was also convicted of violating the Clean Water Act.

**9.** It appears that the defendant did not argue that knowledge that a permit was required by law was also an element of the offense.

**10.** The Ninth Circuit rejected the Third Circuit's analysis, stating:

> Had Congress intended knowledge of the lack of a permit to be an element under subsection (A) it easily could have said so. It specifically inserted a knowledge element in subsection (B), and it did so notwithstanding the "knowingly" modifier which introduces subsection

(2). In the face of such obvious congressional action we will not write something into the statute which Congress so plainly left out. *Hoflin*, 880 F.2d at 1038. The court also observed that the Third Circuit's interpretation of the statute "would render the word 'knowing' in subsection (B) mere surplusage." *Id.*

**11.** In concluding that a federal statute which provided that "whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or regulations" shall be subject to a fine and imprisonment was ambiguous, the Supreme Court cited the following passage from W. LaFave & A. Scott, Criminal Law § 27 (1972), to highlight the ambiguity:

> Still further difficulty arises from the ambiguity which frequently exists concerning what

concludes that *Hoflin* provides a principled construction of the elements of a section 6928(d)(2)(A) violation. First, the Ninth Circuit's interpretation of the statute avoids the linguistic dilemmas presented by the Third Circuit's construction in *Johnson & Towers*. Second, the Ninth Circuit's opinion is also consistent with the general principles of statutory interpretation which have developed in the context of "public welfare" offenses. The seminal case on this issue is *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). In *International Minerals*, the defendant was charged in an information with knowingly shipping sulfuric acid and hydrofluosilic acid without indicating on the shipping documents the proper classification as specified in applicable regulations. The statute under which defendant was charged, 18 U.S.C. § 834(f), made it unlawful to "knowingly violate[ ] any such regulation...." The district court dismissed the information, holding that it failed to allege a "knowing" violation of the regulation. 318 F.Supp. 1335, 1336 (S.D.Ohio 1970). The government appealed to the Sixth Circuit Court of Appeals which then certified the appeal to the Supreme Court.

The question before the Supreme Court was whether knowledge of the regulation was a required element of the charged offense. There was no dispute that, at a minimum, the statute required knowledge of the shipment. In holding that knowledge of the regulation was not an element of the offense, Justice Douglas writing for a majority of the court could discern "no reason why the word 'regulation' should not be construed as a shorthand designation for specific acts or omissions which violate the Act. The Act, so viewed, does not signal an exception to the rule that ignorance of the law is no excuse and is

wholly consistent with the legislative history." *Id.* at 562, 91 S.Ct. at 1700. Further, after reviewing the legislative history of the statute, the Court found there was no basis upon which to conclude that Congress intended to require "knowledge of both the facts and the pertinent law before a criminal conviction could be sustained under this Act." *Id.* at 563, 91 S.Ct. at 1701. Finally, and most significantly, the Court perceived no due process concerns in Congress not requiring a mental state as to each and every element of the offense because where, as in that case, "dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *Id.* at 565, 91 S.Ct. at 1701–02. The Court therefore reversed the dismissal of the information.

 There is no question that RCRA is a public welfare statute designed to protect the public and the environment from the dangers posed by hazardous wastes. *United States v. McDonald & Watson Waste Oil Co.*, 933 F.2d 35, 46 (1st Cir. 1991); *United States v. Hayes International Corp.*, 786 F.2d 1499, 1503 (11th Cir.1986). Under the reasoning of *International Minerals*, it was within Congress' power in enacting section 6928(d)(2)(A) to not require as elements of the offense either knowledge that the absence of a permit violates the law or knowledge that a permit had not been acquired. This court's construction of the statute therefore presents no due process concerns and is also consistent with the principle that public welfare statutes are not to be interpreted narrowly but rather should be interpreted to accomplish the regulatory purpose. *See Johnson & Towers*, 741 F.2d at 666.

---

the words or phrases modify. What, for instance, does 'knowingly' modify in a sentence from a 'blue sky' law criminal statute punishing one who 'knowingly sells a security without a permit' from the securities commissioner? To be guilty must the seller of a security without a permit know only that what he is doing constitutes a sale, or must he also know that the thing he sells is a security, or must he

also know that he has no permit to sell the security he sells? As a matter of grammar the statute is ambiguous; it is not clear how far down the sentence the word 'knowingly' is intended to travel—whether it modifies 'sells,' or 'sells a security,' or 'sells a security without a permit.'

*Liparota*, 471 U.S. at 424–25 n. 7, 105 S.Ct. at 2087 n. 7 (emphasis added).

Finally, the court does not consider its construction of the statute to be inconsistent with the Eleventh Circuit's opinion in *United States v. Hayes International Corp.* The court in *Hayes International* was called upon to examine the elements of an offense under section 6928(d)(1). Section 6928(d)(1) makes it unlawful for

> Any person who—
>
> (1) knowingly transports or causes to be transported any hazardous waste identified or listed under this subchapter to a facility which does not have a permit under this subchapter or pursuant to title I of the Marine Protection Research, and Sanctuaries Act....

The Eleventh Circuit in *Hayes International* considered two statutory interpretation issues that are relevant to the questions raised in this case: (1) whether knowledge of the regulations is required and (2) whether knowledge of the permit status is required. As to the first question the court held that knowledge of the regulations was not an element of a section 6928(d)(1) violation. Noting that subsection (d)(1) is a public welfare statute, the court held that "it is completely fair and reasonable to charge those who choose to operate in such areas with knowledge of the regulatory provisions." *Id.* at 1503. The court, however, held that knowledge of the permit status is a necessary element of a subsection (d)(1) offense. The court reasoned that to not require proof that the defendant had knowledge of the facility's permit status could criminalize innocent conduct. *Id.* at 1504 (citing *Liparota,* 471 U.S. at 426, 105 S.Ct. at 2088). As an example, the court noted that a defendant may have reasonably believed that the site had a permit but was misled by people at the site. The court observed that "[i]f Congress intended such a strict statute, it could have dropped the 'knowingly' requirement." *Id.* at 1504.

It could be argued here that by not requiring the government to prove that an individual was aware of the absence of a permit there is also the potential for criminalizing innocent conduct. For example, a lower level employee may have been misled by his superiors that the business had acquired a permit for the treatment, storage, or disposal of the hazardous waste. While the court perceives a degree of unfairness which could arise from the prosecution of such a person there is, as noted, *supra* at 965, no constitutional barrier to Congress imposing criminal liability in such a case.

Moreover, there are significant differences in the structure of subsections (d)(1) and (d)(2) that further support this court's conclusion that Congress did not intend the word "knowingly" at the beginning of subsection (d)(2) to modify "without a permit" in subparagraph (A). Unlike subsection (d)(2), subsection (d)(1) is not subdivided into separate subparagraphs. The word "knowingly" appears only once at the beginning of the subsection. The remaining elements of the offense are neither specifically modified by any mental state nor separated by punctuation marks. Thus, while subsection (d)(1) is ambiguous there is a reasonable basis upon which to conclude that "knowingly" modifies every element of the offense. As has been previously discussed, the same conclusion is not warranted as to subsection (d)(2)(A).

■ Accordingly, based upon the overall structure of section 6928(d)(2), Congress' objective in enacting RCRA of protecting public health and the environment, and applicable principles of statutory construction, the court holds that the government is not required to prove that defendants in this case knew that a permit was required by law nor that they knew that GCL did not have a permit in order to prove that defendants violated section 6928(d)(2)(A). The government's motion in limine is therefore granted.

B. *Bill of Particulars and Discovery*

■ Defendant Laughlin has moved pursuant to Fed.R.Crim.P. 7(f) for a bill of particulars with respect to Counts 1–22, 26, and 27 of the indictment. Defendant contends that these Counts fail to identify which creosote and hydrochloric acid defendant stored, disposed, and released without reporting. Therefore, defendant argues that he is unable to adequately prepare a

defense, avoid unfair surprise at trial, or protect himself against double jeopardy in a subsequent prosecution.

Although the court agrees with defendant that the indictment itself fails to sufficiently identify the particular creosote and hydrochloric acid involved in Counts 1–22, 26, and 27, the government has, as defendant acknowledges, subsequently provided further particularization in this respect. In the government's memorandum of law in support of its motion in limine, the government described defendants' alleged conduct as follows:

> When each "batch" of railroad ties were removed from GCL's pressurized treatment vessel creosote was allowed to spill out onto the ground. Some of this creosote was salvaged, other portions were sopped up with sawdust and disposed of "out back" in an illegal hazardous waste pile. This hazardous waste pile bordered on a federally protected wetlands (and in fact the wetlands once extended to and was filled in by the waste pile). The illegal disposals occurred on a virtually continuous basis from 1980 until January, 1988.

Government's Memorandum of Law, Document ("Doc.") 7, at 1–2. This information serves to provide adequate detail as to the allegations which are made in Counts 1–22 with respect to which creosote was stored, disposed, and released without notice, and the method by which the storage and disposal occurred. Similarly, in the government's response to the defendants' motion for a bill of particulars and discovery the government also adequately particularizes the allegations contained in Counts 26 and 27, which charge defendant Laughlin with disposing of, on or about January 8, 1988, the remaining creosote and hydrochloric acid without a permit and without giving appropriate notice of the release. The government states in its memorandum of law that "all creosote and hydrochloric acid at the GCL facility, not already disposed of, was disposed of via abandonment at the time of the Mr. Laughlin's departure from the facility." Government's Memorandum of Law, Doc. 13, at 2.

■ No bill of particulars is required if the defendant has been provided with the information sought through an alternative source. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). To the extent Counts 1–22, 26, and 27 of the indictment refer only to that creosote and hydrochloric acid specified in the government's memoranda of law, the government need not provide a bill of particulars. However, if the government intends to establish defendant's liability in these Counts by reference to other creosote and hydrochloric acid, it must provide defendant with this information in a bill of particulars.

■ Defendant also moves pursuant to Fed.R.Crim.P. 16(a)(1)(C) for an order directing the government to identify those documents that it intends to use as evidence in chief at trial. Defendant asserts that although the government has provided him with the opportunity to review and photocopy several boxes of documents related to this prosecution, the government has failed to identify with any specificity which documents it intends to use as evidence in chief. There is no question that under Rule 16(a)(1)(C) the government has an affirmative duty to permit defendant to review and copy those documents in its custody or control that it intends to use as evidence in chief at trial. To the extent that the government has not as of the date of this opinion identified for defendant's review those specific documents that it intends to use as evidence in chief at trial, the court hereby orders the government to do so.

### III. CONCLUSION

In sum, the government's motion in limine is granted. Defendant Laughlin's motion for a bill of particulars and discovery is granted to the extent indicated in this opinion.

It is So Ordered.