**UNITED STATES of America, Appellant**

**v.**

**JOHNSON & TOWERS, INC., Jack W. Hopkins and Peter Angel.**

**No. 83–5745.**

United States Court of Appeals, Third Circuit.

Argued May 21, 1984.

Decided Aug. 15, 1984.

As Amended Aug. 21, 1984.

---

Michael Gilberti (argued), Asst. U.S. Atty., W. Hunt Dumont, U.S. Atty., Newark, N.J., for appellant.

Joseph A. Carmen (argued), Haddonfield, N.J., for appellee Peter Angel.

Jeffrey A. Libert (argued), Falciani & Fletcher, Woodbury, N.J., for appellee Jack W. Hopkins.

Before GARTH and SLOVITER, Circuit Judges, and NEAHER, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us is the government's appeal from the dismissal of three counts of an indictment charging unlawful disposal of hazardous wastes under the Resource Conservation and Recovery Act. In a question of first impression regarding the statutory definition of "person," the district court concluded that the Act's criminal penalty provision imposing fines and imprisonment could not apply to the individual defendants. We will reverse.

I.

The criminal prosecution in this case arose from the disposal of chemicals at a plant owned by Johnson & Towers in Mount Laurel, New Jersey. In its operations the company, which repairs and overhauls large motor vehicles, uses degreasers and other industrial chemicals that contain

* Hon. Edward R. Neaher, United States District Court for the Eastern District of New York, sitting by designation.

chemicals such as methylene chloride and trichlorethylene, classified as "hazardous wastes" under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901–6987 (1982) and "pollutants" under the Clean Water Act, 33 U.S.C. §§ 1251–1376 (1982). App. at 18a. During the period relevant here, the waste chemicals from cleaning operations were drained into a holding tank and, when the tank was full, pumped into a trench. The trench flowed from the plant property into Parker's Creek, a tributary of the Delaware River. Under RCRA, generators of such wastes must obtain a permit for disposal from the Environmental Protection Agency (E.P.A.). The E.P.A. had neither issued nor received an application for a permit for Johnson & Towers' operations.

The indictment named as defendants Johnson & Towers and two of its employees, Jack Hopkins, a foreman, and Peter Angel, the service manager in the trucking department.[1] According to the indictment, over a three-day period federal agents saw workers pump waste from the tank into the trench, and on the third day observed toxic chemicals flowing into the creek.

Count 1 of the indictment charged all three defendants with conspiracy under 18 U.S.C. § 371 (1982). Counts 2, 3, and 4 alleged violations under the RCRA criminal provision, 42 U.S.C. § 6928(d) (1982). Count 5 alleged a violation of the criminal provision of the Clean Water Act, 33 U.S.C. § 1319(c) (1982). Each substantive count also charged the individual defendants as aiders and abettors under 18 U.S.C. § 2 (1982).

The counts under RCRA charged that the defendants "did knowingly treat, store, and dispose of, and did cause to be treated, stored and disposed of hazardous wastes without having obtained a permit ... in that the defendants discharged, deposited, injected, dumped, spilled, leaked and placed degreasers ... into the trench ...." The indictment alleged that both Angel and Hopkins "managed, supervised and directed a substantial portion of Johnson & Towers' operations ... including those related to the treatment, storage and disposal of the hazardous wastes and pollutants" and that the chemicals were discharged by "the defendants and others at their direction." The indictment did not otherwise detail Hopkins' and Angel's activities or responsibilities.

Johnson & Towers pled guilty to the RCRA counts. Hopkins and Angel pled not guilty, and then moved to dismiss counts 2, 3, and 4. The court concluded that the RCRA criminal provision applies only to "owners and operators," i.e., those obligated under the statute to obtain a permit. Since neither Hopkins nor Angel was an "owner" or "operator,"[2] the district court granted the motion as to the RCRA charges but held that the individuals could be liable on these three counts under 18 U.S.C. § 2 for aiding and abetting. The court denied the government's motion for reconsideration, and the government appealed to this court under 18 U.S.C. § 3731 (1982).

We hold that section 6928(d)(2)(A) covers employees as well as owners and operators of the facility who knowingly treat, store, or dispose of any hazardous

---

1. Angel was so described by the district court. App. at 18a. Angel's brief says he was "service manager of the parts department," Brief for Appellee Angel at 5, defendant Hopkins' brief calls Angel "the service manager," Brief for Appellee Hopkins at 5, and the government brief refers to him as "the plant supervisor," Brief for Appellant at 5. The record contains no information on the defendants' job titles or responsibilities.

2. The government had argued before the district court that the individual defendants were "oper-

ators," a term defined in the regulations as "the person responsible for the overall operation of a facility." 40 C.F.R. § 260.10 (1982). The district court found, however, that "[t]he use of the terminology 'overall operation' is indicative of an attempt to focus on those individuals who exercise primary control even though they may not actually own the company," and concluded that the defendants were not within this category. App. at 27. The government does not contest the finding on appeal.

waste, but that the employees can be subject to criminal prosecution only if they knew or should have known that there had been no compliance with the permit requirement of section 6925.

## II.

The single issue in this appeal is whether the individual defendants are subject to prosecution under RCRA's criminal provision, which applies to:

*[a]ny person who—*

. . . .

(2) knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter either—

(A) without having obtained a permit under section 6925 of this title ... or

(B) in knowing violation of any material condition or requirement of such permit.

42 U.S.C. § 6928(d) (emphasis added). The permit provision in section 6925, referred to in section 6928(d), requires "each person owning or operating a facility for the treatment, storage, or disposal of hazardous waste identified or listed under this subchapter to have a permit" from the E.P.A.

The parties offer contrary interpretations of section 6928(d)(2)(A). Defendants consider it an administrative enforcement mechanism, applying only to those who come within section 6925 and fail to comply; the government reads it as penalizing anyone who handles hazardous waste without a permit or in violation of a permit. Neither party has cited another case, nor have we found one, considering the application of this criminal provision to an individual other than an owner or operator.

### A.

As in any statutory analysis, we are obliged first to look to the language and then, if needed, attempt to divine Congress' specific intent with respect to the issue. *See Citizens Council v. Brinegar,* 741 F.2d 584 at 589–590 (3d Cir.1984). The language of the particular section under consideration does not readily support either interpretation proffered by the opposing parties. Had Congress merely intended an administrative enforcement measure, as defendants contend, it could have specified that any person required under section 6925 to obtain a permit would be liable for acting without one. On the other hand, if Congress had meant to subject to prosecution anyone who did not have a permit, as the government argues, it could have phrased subsection (A) of section 6928(d)(2) to provide that any treatment, storage or disposal in the absence of a permit or outside the terms of such a permit is illegal. It did not so state explicitly.

However, if we view the statutory language in its totality, the congressional plan becomes more apparent. First, "person" is defined in the statute as "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 6903(15) (1982). Had Congress meant in section 6928(d)(2)(A) to take aim more narrowly, it could have used more narrow language. *Cf. Russello v. United States,* —— U.S. ——, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (RICO). Since it did not, we attribute to "any person" the definition given the term in section 6903(15).[3]

**3.** The defendants argue that "person" should be interpreted narrowly because in two similar statutes, the Clean Air Act and the Clean Water Act, Congress added to its definition of "person" the category of "any responsible corporate officer," thus raising some doubt as to whether "person" was to be given its common-sense meaning. *See* 42 U.S.C. § 7413(c)(3) (1982) (Clean Air Act); 33 U.S.C. § 1319(c)(3) (1982) (Clean Water Act). Without passing on the meaning of "any person" in the Clean Air or Clean Water

Act, which are not the subject of this appeal, we note that the addition in those acts of "any responsible corporate officer" seems to expand rather than limit the class of potential defendants. As the Supreme Court said in *United States v. Dotterweich,* 320 U.S. 277, 282, 64 S.Ct. 134, 137, 88 L.Ed. 48 (1943), an exercise of draftsmanship intended to broaden the scope of a criminal provision "can hardly be found ground for relieving from such liability the individual agents of the corporation."

Second, under the plain language of the statute the only explicit basis for exoneration is the existence of a permit covering the action. Nothing in the language of the statute suggests that we should infer another provision exonerating persons who knowingly treat, store or dispose of hazardous waste but are not owners or operators.

■ Finally, though the result may appear harsh, it is well established that criminal penalties attached to regulatory statutes intended to protect public health, in contrast to statutes based on common law crimes, are to be construed to effectuate the regulatory purpose. *See United States v. Park*, 421 U.S. 658, 672–73, 95 S.Ct. 1903, 1911–1912, 44 L.Ed.2d 489 (1975); *Smith v. California*, 361 U.S. 147, 152, 80 S.Ct. 215, 218, 4 L.Ed.2d 205 (1959); *United States v. Dotterweich*, 320 U.S. 277, 280–81, 284–85, 64 S.Ct. 134, 136–137, 138, 88 L.Ed. 48 (1943); *United States v. Balint*, 258 U.S. 250, 251–52, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922); *see also United States v. Frezzo Brothers, Inc.*, 602 F.2d 1123, 1128 (3d Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980).

The statutory construction issue here, whether the criminal provision may be applied to the individual defendants who were not in the position to secure a permit, is similar to that presented to the Supreme Court in *United States v. Dotterweich*. There the defendant, a jobber, had been convicted of violating the Food and Drugs Act, providing a criminal penalty for "any person" shipping adulterated or misbranded drugs. Under the statute, there was no violation if a guaranty had been issued with the goods stating that they were not contaminated or misbranded. The drugs in question originated with the manufacturer and the jobber had undertaken only to label and ship them. The Court of Appeals overturned the conviction, concluding that the guaranty provision could apply only to principals and that the penalty provision must be correspondingly limited. The court found it "difficult to believe that Congress expected anyone except the principal to get such a guaranty, or to make the guilt of an agent depend upon whether his employer had gotten one." *United States v. Buffalo Pharmacal Co.*, 131 F.2d 500, 503 (2d Cir. 1942).

The Supreme Court reinstated the conviction. In construing the term "any person," it rejected the Second Circuit's restrictive view, and said:

> The Food and Drugs Act of 1906 was an exertion by Congress of its power to keep impure and adulterated food and drugs out of the channels of commerce. By the Act of 1938, Congress extended the range of its control over illicit and noxious articles and stiffened the penalties for disobedience. The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection. Regard for these purposes should infuse construction of the legislation if it is to be treated as a working instrument of government and not merey as a collection of English words.

*Dotterweich*, 320 U.S. at 280, 64 S.Ct. at 136.

Thus, we must inquire into the congressional intent to determine whether RCRA should be construed in the same manner as was the Food and Drugs Act in *Dotterweich*.

### B.

Congress enacted RCRA in 1976 as a "cradle-to-grave" regulatory scheme for toxic materials, providing "nationwide protection against the dangers of improper hazardous waste disposal." H.R.Rep. No. 1491, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6238, 6249. RCRA was enacted to provide "a multifaceted approach towards solving the problems associated with the 3–4 billion tons of discarded materials generated each year, and the problems resulting from the anticipated 8% annual increase in the volume of such waste." *Id.* at 2, 1976 U.S. Code Cong. & Ad.News at 6239. The committee reports accompanying legislative consideration of RCRA contain numerous

statements evincing the Congressional view that improper disposal of toxic materials was a serious national problem. *See* S.Rep. No. 172, 96th Cong., 2d Sess. 1, *reprinted in* 1980 U.S.Code Cong. & Ad. News 5019; H.R.Rep. No. 1491, *supra* at 3–4, 1976 U.S.Code Cong. & Ad.News at 6241.

The original statute made knowing disposal (but not treatment or storage) of such waste without a permit a misdemeanor. Resource Conservation and Recovery Act of 1976, Pub.L. No. 94–580, § 3008(d), 90 Stat. 2795, 2812 (1976). Amendments in 1978 and 1980 expanded the criminal provision to cover treatment and storage and made violation of section 6928 a felony. The fact that Congress amended the statute twice to broaden the scope of its substantive provisions and enhance the penalty is a strong indication of Congress' increasing concern about the seriousness of the prohibited conduct.

Although Congress' concern may have been directed primarily at owners and operators of generating facilities, since it imposed upon them in section 6925 the obligation to secure the necessary permit, Congress did not explicitly limit criminal liability for impermissible treatment, storage, or disposal to owners and operators. The House Committee's discussion of enforcement contains several references relevant only to owners and operators, but it says, in addition: "This section *also* provides for criminal penalties for the person who ... disposes of any hazardous waste without a permit under this title ...." H.R.Rep. No. 1491, *supra* at 31, 1976 U.S.Code Cong. & Ad.News at 6269 (emphasis added). The "also" demonstrates that the reach of section 6928(d)(2) is broader than that of the rest of the statute, particularly the administrative enforcement remedies. The acts that were made the subject of the criminal provision were distinguished in the House Report from the other conduct subject to administrative regulation because they were viewed as more serious offenses. As the Report explained, "[the] justification for the penalties section is to permit a broad variety of mechanisms so as to stop the illegal disposal of hazardous wastes." *Id.*

We conclude that in RCRA, no less than in the Food and Drugs Act, Congress endeavored to control hazards that, "in the circumstances of modern industrialism, are largely beyond self-protection." *United States v. Dotterweich*, 320 U.S. at 280, 64 S.Ct. at 136. It would undercut the purposes of the legislation to limit the class of potential defendants to owners and operators when others also bear responsibility for handling regulated materials. The phrase "without having obtained a permit *under section 6925*" (emphasis added) merely references the section under which the permit is required and exempts from prosecution under section 6928(d)(2)(A) anyone who has obtained a permit; we conclude that it has no other limiting effect. Therefore we reject the district court's construction limiting the substantive criminal provision by confining "any person" in section 6928(d)(2)(A) to owners and operators of facilities that store, treat or dispose of hazardous waste, as an unduly narrow view of both the statutory language and the congressional intent.

### III.

#### A.

Since we must remand this case to the district court because the individual defendants are indeed covered by section 6928(d)(2)(A), it is incumbent on us to reach the question of the requisite proof as to individual defendants under that section. The government argues that "knowingly" applies only to "treats, stores, or disposes" of any hazardous waste, and that it does *not* have to show that the defendant knew either that the waste was hazardous or that there was no permit. Letter brief for Appellant at 2. Thus, the government argues, it need prove only that (1) the defendant is a "person"; (2) the defendant handled hazardous material, and (3) there was no permit for such disposal or treatment.

We conclude that this interpretation is overly literal.

We focus again on the statutory language:

[a]ny person who—

. . . .

(2) *knowingly* treats, stores, or disposes of any hazardous waste identified or listed under this subchapter either—

(A) without having obtained a permit under section 6925 of this title ... or

(B) *in knowing violation* of any material condition or requirement of such permit.

42 U.S.C. § 6928(d) (1982) (emphasis added).

If the word "knowingly" in section 6928(d)(2) referred exclusively to the acts of treating, storing or disposing, as the government contends, it would be an almost meaningless addition since it is not likely that one would treat, store or dispose of waste without knowledge of that action. At a minimum, the word "knowingly", which introduces subsection (A), must also encompass knowledge that the waste material is hazardous. Certainly, "[a] person thinking in good faith that he was [disposing of] distilled water when in fact he was [disposing of] some dangerous acid would not be covered." *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 563–64, 91 S.Ct. 1697, 1701, 29 L.Ed.2d 178 (1971).

Whether "knowingly" also modifies subsection (A) presents a somewhat different question. The district court concluded that it is not necessary to show that individual defendants prosecuted under section 6928(d)(2)(A) knew that they were acting without a permit or in violation of the law. Since we have already concluded that this is a regulatory statute which can be classified as a "public welfare statute," there

would be a reasonable basis for reading the statute without any *mens rea* requirement, as the Court did in *United States v. Behrman*, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619 (1922) and *United States v. Balint*, 258 U.S. 250, 252–54, 42 S.Ct. 301, 302–303, 66 L.Ed. 604 (1922). *See generally Morissette v. United States*, 342 U.S. 246, 250–260, 72 S.Ct. 240, 243–248, 96 L.Ed. 288 (1952) (distinguishing between regulatory statutes and those incorporating common law offenses). However, whatever policy justification might warrant applying such a construction as a matter of general principle, such a reading would be arbitrary and nonsensical when applied to this statute.

Treatment, storage or disposal of hazardous waste in violation of any material condition or requirement of a permit must be "knowing," since the statute explicitly so states in subsection (B). It is unlikely that Congress could have intended to subject to criminal prosecution those persons who acted when no permit had been obtained irrespective of their knowledge (under subsection (A)), but not those persons who acted in violation of the terms of a permit unless that action was knowing (subsection (B)). Thus we are led to conclude either that the omission of the word "knowing" in (A) was inadvertent or that "knowingly" which introduces subsection (2) applies to subsection (A).[4]

As a matter of syntax we find it no more awkward to read "knowingly" as applying to the entire sentence than to read it as modifying only "treats, stores or disposes." The Eighth Circuit recently addressed a similar linguistic problem in a statute penalizing any person who "knowingly uses, transfers, acquires ... or possesses [food] coupons ... in any manner not authorized by this chapter ...." 7 U.S.C. § 2024(b). That court observed:

---

**4.** A similar statute construed by the Eighth Circuit also presented the disparity presented by RCRA in that Congress *did* insert the word "knowing" in one subsection but not in another. The court there concluded that "[t]he different placement of the words 'knowingly' and 'knowing' in the two subsections of the statute is too

weak a reed to support the argument that Congress intended to displace a time-honored principle of criminal jurisprudence." *United States v. Marvin*, 687 F.2d 1221, 1226 (8th Cir.1982), *cert. denied*, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983).

[P]urely as a verbal matter, the word "knowingly" in subsection (b) may naturally be read to modify the entire remainder of the clause in which it appears, including the phrase, "in any manner not authorized," etc. To read "knowingly" as having nothing to do with the phrase "in any manner not authorized" is, we suppose, verbally tenable, but it is not the only meaning the words will bear, nor even, we think, the more natural one.

*United States v. Marvin,* 687 F.2d 1221, 1226 (8th Cir.1982), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983). We believe that analysis to be appropriate here.

### B.

However, our conclusion that "knowingly" applies to all elements of the offense in section 6298(d)(2)(A) does not impose on the government as difficult a burden as it fears. On this issue, we are guided by the Court's holding in *United States v. International Minerals & Chemical Corp.,* 402 U.S. at 563, 91 S.Ct. at 1700, that under certain regulatory statutes requiring "knowing" conduct the government need prove only knowledge of the actions taken and not of the statute forbidding them. *See also United States v. Udofot,* 711 F.2d 831, 836 (8th Cir.) (knowing delivery of firearms to carrier), *cert. denied,* —— U.S. ——, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983); *United States v. Currier,* 621 F.2d 7, 10 (1st Cir.1980) (knowing failure to maintain firearms transaction records). As the Court stated in *International Minerals,*

> The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation. In the context of these proposed 1960 amendments we decline to attribute to Congress the inaccurate view that that Act requires proof of knowledge of the law, as well as the facts, and that it intended to endorse that interpretation by retaining the word "knowingly."

402 U.S. at 563, 91 S.Ct. at 1701.

The Court recognized that under certain statutes, such as the income tax law, the government must show a purpose by defendant to bring about the forbidden result. However, the Court in *International Minerals,* construing a statute and regulations which proscribed knowing failure to record shipment of chemicals, stated,

> [W]here, as here and as in *Balint* and *Freed, dangerous or deleterious devices or products or obnoxious waste materials are involved,* the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation.

402 U.S. at 565, 91 S.Ct. at 1701 (emphasis added).

Even the dissenting Justices, viewing the highly regulated shipping industry, agreed that the officers, agents, and employees

> are under a species of absolute liability for violation of the regulations despite the "knowingly" requirement. This, no doubt, is as Congress intended it to be. Cf. *United States v. Dotterweich,* 320 U.S. 277 [64 S.Ct. 134, 88 L.Ed. 48]; *United States v. Balint,* 258 U.S. 250 [42 S.Ct. 301, 66 L.Ed. 604]. Likewise, prosecution of regular shippers for violations of the regulations could hardly be impeded by the "knowingly" requirement for triers of fact would have no difficulty whatever *in inferring knowledge on the part of those whose business it is to know, despite their protestations to the contrary.*

402 U.S. at 569, 91 S.Ct. at 1703–1704.

The indictment in this case specified the crime in the language of the statute. Thus it did not include language spelling out the knowledge requirements of the statute discussed in text. Nevertheless, in light of our interpretation of section 6928(d)(2)(A), it is evident that the district court will be required to instruct the jury, *inter alia,* that in order to convict each defendant the jury must find that each knew that Johnson & Towers was required to have a permit, and knew that Johnson & Towers did not have a permit. Depending on the evidence, the district court may also instruct the jury that such knowledge may be inferred.

The indictment charged that both individual defendants "managed, supervised, and directed a substantial portion of Johnson & Towers' operations at the Mount Laurel plant, including those related to ... disposal of hazardous wastes and pollutants." App. at 7a. This case reaches us without any evidence or findings of the defendants' actual knowledge of the facts at issue, and with inconsistent descriptions of defendants' responsibilities. As the Supreme Court said in *Dotterweich*, the question of responsibility can be left to "the good sense of prosecutors, the wise guidance of trial judges, and the ultimate judgment of juries." 320 U.S. at 285, 64 S.Ct. at 138.

## IV.

In summary, we conclude that the individual defendants are "persons" within section 6928(d)(2)(A), that all the elements of that offense must be shown to have been knowing, but that such knowledge, including that of the permit requirement, may be inferred by the jury as to those individuals who hold the requisite responsible positions with the corporate defendant. For the foregoing reasons, we will reverse the district court's order dismissing portions of counts 2, 3 and 4 of the indictment, and we will remand for further proceedings consistent with this opinion.