**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gale E. DEAN, Defendant–Appellant.**

No. 91–5970.

United States Court of Appeals, Sixth Circuit.

Argued May 14, 1992.

Decided July 8, 1992.

Rehearing and Rehearing En Banc Denied Aug. 21, 1992.

Jerry G. Cunningham, U.S. Atty., Office of the U.S. Atty., Knoxville, Tenn., Guy W. Blackwell, Asst. U.S. Atty., Office of the U.S. Atty., Greeneville, Tenn., Andrew C. Mergen (argued and briefed), U.S. Dept. of Justice, Land & Natural Resources Div., Paul S. Rosenzweig, U.S. Dept. of Justice, Environmental Crimes Section, Washington, D.C., for plaintiff-appellee.

Barry P. Staubus (argued and briefed), Richard W. Pectol & Associates, Johnson City, Tenn., for defendant-appellant.

Before NELSON and NORRIS, Circuit Judges; and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

Defendant Gale E. Dean appeals his convictions on one count of conspiracy to violate the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 *et seq.*, in violation of 18 U.S.C. § 371; one count of failure to file documentation of hazardous waste generation, storage, and disposal as required by 42 U.S.C. § 6928(d)(4); and one count of storage of spent chromic acid without a permit, one count of storage and disposal of chromic acid rinse water and wastewater sludges in a lagoon without a permit, and one count of disposal of paint sludge and solvent wastes in a pit without a permit, all in violation of 42 U.S.C. § 6928(d)(2)(A).

### I.

Defendant's convictions arose out of the operation of the General Metal Fabricators, Inc. (GMF) facility in Erwin, Tennessee, which engaged in metal stamping, plating, and painting. The facility utilized hazardous chemicals and generated hazardous waste. The owners of GMF, Joseph and Jean Sanchez; as well as Dean, the production manager; and Clyde Griffith, the plant manager; were indicted for conspiracy to violate RCRA, and, individually, for violations of various sections of the statute. The district court granted defendant's mo-

tion to sever his trial from that of the other defendants.

RCRA provides a comprehensive system of oversight of hazardous materials, a system centered upon requirements that facilities utilizing such materials obtain permits, and maintain proper records of the treatment, storage, and disposal of hazardous substances. No permit was sought for the GMF facility. The hazardous waste disposal practices at GMF were discovered by chance by state waste-management authorities whose attention was caught, while driving to an appointment at another facility, by two 55–gallon drums abandoned among weeds on GMF's property.

As production manager, Dean had day-to-day supervision of GMF's production process and employees. Among his duties was the instruction of employees on hazardous waste handling and disposal. Numerous practices at GMF violated RCRA. GMF's plating operations utilized rinse baths, contaminated with hazardous chemicals, which were drained through a pipe into an earthen lagoon outside the facility. In addition, Dean instructed employees to shovel various kinds of solid wastes from the tanks into 55–gallon drums. Dean ordered the construction of a pit, concealed behind the facility, into which 38 drums of such hazardous waste were tossed. The contents spilled onto the soil from open or corroded drums. Chemical analyses of soil and solid wastes, entered by stipulation at trial, revealed that the lagoon and the pit were contaminated with chromium. In addition, the pit was contaminated with toluene and xylene solvents. All of these substances are hazardous. Drums of spent chromic acid solution were also illegally stored on the premises.

Defendant was familiar with the chemicals used in each of the tanks on the production lines, and described to authorities the manner in which the contents of the rinse tanks were deposited in the lagoon. Material Safety Data Sheets (MSDS) pro-

---

* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

vided to GMF by the chemical manufacturer clearly stated that various chemicals in use at GMF were hazardous and were subject to state and federal pollution control laws. The MSDS were given to investigators by Dean, who demonstrated his knowledge of their contents. The MSDS delivered with the chromic acid made specific reference to RCRA and to related EPA regulations. Dean informed investigators that he "had read this RCRA waste code but thought it was a bunch of bullshit."

## II.

### A.

■ Dean assigns as error numerous aspects of the proceedings in the trial court. We shall address first a number of contentions going to the scope and elements of RCRA's criminal provisions, which we think of primary importance among the issues raised by defendant. The first of these issues arises in connection with defendant's contention that the trial court erred in denying his motion for an acquittal on Count 4, because there was no evidence that defendant knew of RCRA's permit requirement. Defendant's characterization of the evidence is inaccurate; but moreover, we see no basis on the face of the statute for concluding that knowledge of the permit requirement is an element of the crime. The statute penalizes:

Any person who—

. . . .

(2) knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter—

(A) without a permit under this subchapter or pursuant to title I of the Marine Protection, Research, and Sanctuaries Act (86 Stat. 1052); or

(B) in knowing violation of any material condition or requirement of such permit; or

(C) in knowing violation of any material condition or requirement of any applicable interim status regulations or standards

. . . .

42 U.S.C. § 6928(d)(2). Defendant was convicted of violating subsection 6928(d)(2)(A).

The question of interpretation presented by this provision is the familiar one of how far the initial "knowingly" travels. Other courts of appeals have divided on this question. In *United States v. Johnson & Towers, Inc.*, 741 F.2d 662 (3d Cir.1984), *cert. denied, sub nom.*, the Court of Appeals for the Third Circuit concluded that knowledge of the permit requirement was an element of the crime, observing:

Treatment, storage or disposal of hazardous waste in violation of any material condition or requirement of a permit must be "knowing," since the statute explicitly so states in subsection (B). It is unlikely that Congress could have intended to subject to criminal prosecution those persons who acted when no permit had been obtained irrespective of their knowledge (under subsection (A)), but not those persons who acted in violation of the terms of a permit unless that action was knowing (subsection (B)). Thus we are led to conclude either that the omission of the word "knowing" in (A) was inadvertent or that "knowingly" which introduces subsection (2) applies to subsection (A).

*Id.* at 668 (footnote omitted).

The Court of Appeals for the Ninth Circuit disagreed with the Third Circuit in *United States v. Hoflin*, 880 F.2d 1033 (9th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990). The Ninth Circuit noted first the well-established principle of statutory construction that courts will "give effect, if possible, to every clause and word of a statute," *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (citing *Inhabitants v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 395, 27 L.Ed. 431 (1883)), pointing out that the Third Circuit's reading of subsection 6928(d)(2)(A) would render mere surplusage the word "knowing" in subsections 6928(d)(2)(B) and (C). *Hoflin*, 880 F.2d at 1038. The Ninth Circuit also disagreed with the Third Circuit that there was anything illogical about reading subsections 6928(d)(2)(B) and (C) to have a knowledge requirement but subsec-

tion 6928(d)(2)(A) to have none. The Ninth Circuit observed that the permit requirement is intended to give the EPA notice that oversight of a facility is necessary (and, by implication, the force of the statutory scheme would be greatly diminished by exempting all who claimed ignorance of the statute's requirements). The difference in *mens rea* between the subsections signifies the relative importance, in the estimation of Congress, of the twin requirements of obtaining a permit and complying with the permit. This ranking is consistent with the greater likelihood that compliance *with* the permit will be monitored. The Court of Appeals for the Fourth Circuit agreed with the Ninth Circuit in *United States v. Dee,* 912 F.2d 741 (4th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991).

All of the courts to address this question have reasoned by analogy from the holding of the Supreme Court in *United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). In that case, the indictment was brought under 18 U.S.C. § 834(f), which penalizes knowing violation of any regulation. The regulation at issue, enacted by the Interstate Commerce Commission, required shipping papers to reflect certain information concerning corrosive liquids being shipped. The question before the Supreme Court was whether knowledge of existence of the regulation was an element of the crime. The Court held that it was not, turning its decision upon the maxim that ignorance of the law is no excuse. The Court concluded its opinion by stating, with equal force here, that when "dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *Id.* at 565, 91 S.Ct. at 1701. The Court of Appeals for the Third Circuit mitigated its holding in *Johnson & Towers* somewhat in light of *International Minerals,* holding that knowledge of RCRA would be imputed to employees above a certain level of responsibility (no guidance

was given concerning the level of responsibility required, on grounds that there was insufficient evidence in the record on the responsibilities of the employees at issue).

We agree with the reasoning of the Court of Appeals for the Ninth Circuit in *Hoflin.* The "knowingly" which begins § 6928(d)(2) cannot be read as extending to the subsections without rendering nugatory the word "knowing" contained in subsections 6928(d)(2)(B) and (C). Subsection 6928(d)(2)(A) requires knowing treatment (or knowing storage, or knowing disposal) of hazardous waste. It also requires proof that the treatment, or storage, or disposal, was done without a permit. It does not require that the person charged have known that a permit was required, and that knowledge is not relevant.

As to subsections 6928(d)(2)(B) and (C), the requirements are different. Here, the statute clearly requires in addition that if one is to be charged under 6928(d)(2)(B) with violating the terms of a permit or under 6928(d)(2)(C) with violating regulations then one must be aware of the additional requirements of the permit or regulation. To us the statute is clear, makes sense and does not contain the ambiguities or inconsistencies found by others.

The Court of Appeals for the Third Circuit hypothesized in the alternative that Congress inadvertently omitted the word "knowing" from subsection 6928(d)(2)(A), because, the court opined, the plain language reading of section 6928(d)(2) to which we adhere resulted in an "unlikely" statutory scheme. A general review of the reasonableness of legislative choices, however, is not among our statutory construction tools. The inquiry ends with a cogent means of reading the plain language of the statute. *United States Dep't of Energy v. Ohio,* — U.S. —, 112 S.Ct. 1627, 1635, 118 L.Ed.2d 255 (1992). The *Hoflin* court, moreover, adequately addressed the reasons Congress might have had for crafting the statute in this manner. Finally, we note that statutes which are designed to protect the public health and safety (as is RCRA, *Johnson & Towers,* 741 F.2d at 668) have consistently been distinguished in Su-

preme Court precedent as more likely candidates for diminished *mens rea* requirements. *Liparota v. United States*, 471 U.S. 419, 433, 105 S.Ct. 2084, 2092, 85 L.Ed.2d 434 (1985).

We do not agree with the suggestion in *Johnson & Towers* that section 6928(d)(2)(A) is in fact a strict liability crime if knowledge of the permit requirement need not be shown. The provision applies by its terms to any person who *"knowingly* treats, stores or disposes of hazardous waste." 42 U.S.C. § 6928(d)(2) (emphasis ours). The Supreme Court's pronouncement in *International Minerals*, quoted above, stands for the proposition that persons involved in hazardous waste handling have every reason to be aware that their activities are regulated by law, aside from the rule that ignorance of the law is no excuse. In this case, the documentation provided by the chemical manufacturer abundantly illustrates one means by which knowledge of hazardous waste laws is communicated. Accordingly, even absent the requirement of proof that the defendant knew of RCRA's permit provisions, the statute does not impose strict liability. The district court did not err in declining to grant defendant's motion for acquittal based on his alleged ignorance of RCRA's permit requirement.

### B.

■ Defendant also contends that the district court should have granted his motion for acquittal because subsection 6928(d)(2)(A) was not intended to reach employees who are not "owners" or "operators" of facilities. By its terms, the provision applies to "any person." "Person" is a defined term meaning "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 6903(15).

Defendant would be hard pressed to convince the court that he is not an "individual." He argues, however, that because only owners and operators of facilities are

required to obtain permits, 42 U.S.C. § 6925, the penalty imposed for hazardous waste handling without a permit by subsection 6928(d)(2)(A) must apply only to owners and operators.

This contention is unpersuasive for numerous reasons. Of primary importance is the fact that it is contrary to the unambiguous language of the statute. *Cf. United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 745 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). We agree with the Third Circuit that "[h]ad Congress meant in § 6928(d)(2)(A) to take aim more narrowly, it could have used more narrow language." *United States v. Johnson & Towers, Inc.*, 741 F.2d 662 (3d Cir.1984), *cert. denied, sub nom.* Second, while defendant's argument at first glance has logical appeal in relation to subsection 6928(d)(2)(A), the relevant language "any person" prefaces § 6928(d) generally. A number of separate crimes are set out in § 6928(d), several of them having nothing to do with the permit requirement (*e.g.,* failure to maintain requisite documentation or to comply with regulations). Defendant's argument would accordingly impose a limitation on all of the crimes set out in § 6928(d) on a ground relevant to few of them. Third, even the logical appeal of the assertion does not withstand scrutiny. The fact that Congress chose to impose the permit requirement upon owners and operators does not undercut the value of further assuring permit compliance by enacting criminal penalties which would lead others to make inquiry into the permit status of facilities. Given that "[s]uch wastes typically have no value, yet can only be safely disposed of at considerable cost," *United States v. Hoflin*, 880 F.2d 1033, 1038 (9th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990), facilities generating hazardous waste have a strong incentive to evade the law. Moreover, clean-up of the resulting environmental damage almost always involves far greater cost than proper disposal would have, and may be limited to containing the spread of the harm. Defendant argues that employees are the least likely

persons to know facilities' permit status. However, employees of a facility are more able to ascertain the relevant facts than the general public, which the statute is intended to protect. In light of these factors, it was entirely reasonable for Congress to have created broad criminal liability. Fourth, it is far from clear that defendant is in fact not an "operator" of GMF, a term defined in the regulations to mean "the person responsible for the overall operation of a facility." 40 C.F.R. § 260.10 (1991). Finally, we agree with the Court of Appeals for the Third Circuit that this result is also supported by the decision of the Supreme Court in *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), and by the legislative history. *See Johnson & Towers, Inc.*, 741 F.2d at 665–67. We conclude that employees may be criminally liable under § 6928(d).

### C.

■ Defendant contends that he should have been acquitted on Count 3 because the chromic acid at issue was not "hazardous waste" as required by 42 U.S.C. § 6928(d)(2)(A), set out above. The term "hazardous waste" is defined as:

[A] solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—

(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating irreversible, illness; or

(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5). Count 3 involved spent chromic acid solution which was being stored in drums at the facility. Dean contends that the chromic acid was not "hazardous" within the meaning of § 6903(5), apparently on the ground that the chromic acid did not pose a danger to human health in the conditions under which it was being stored at GMF. *American Mining Congress v. EPA*, 907 F.2d 1179,

1191 (D.C.Cir.1990), upon which defendant relies, contains nothing supporting this proposition, and is directed at an inapposite question of law.

Defendant does not deny that the "chemical ... characteristics" of chromic acid involve a threat to human health, as was prominently stated in the MSDS provided by its vendor. It is not apparent from the plain language of the statute that it requires, as defendant would read it, that a hazardous waste present a threat to human health as a result of the manner in which it is being stored. We note that the definitions of "disposal" and "storage" under the statute are distinguished by the fact that the former is defined to mean placing the waste in a location where environmental contamination may result, while the latter is defined as "containment" of waste in a manner not constituting disposal, *i.e.*, such that environmental contamination will not result. *See*, 42 U.S.C. §§ 6903(3), 6903(33). A substance contained in a manner which does not threaten environmental contamination presumably would not present a threat to human health. Substances being "stored" would accordingly not be "hazardous," therefore storage could never be a predicate for a RCRA violation. This result is clearly contrary to the terms of the statute, and highlights the fallacy in defendant's argument.

Moreover, construing the statute to penalize storage of hazardous substances without a permit, without regard to whether the means of storage is itself unsafe, is in keeping with the statute's purposes. The requirement of a permit is intended to remedy the danger to the public health (underscored by the events in this case) presented by facilities whose generation of hazardous waste is unknown to authorities charged with monitoring the handling of wastes, for the protection of the environment. *Cf. United States v. Hoflin*, 880 F.2d 1033, 1038–39 (9th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990).

### D.

■ Defendant asserts that he should have been acquitted on Count 4 because

the discharges into the lagoon also were not "hazardous waste." This contention is based on defendant's assertion that the lagoon is a "point source" governed by the Clean Water Act. 33 U.S.C. §§ 1251 et seq., 1254. To reach the issue presented by this assignment of error, it is necessary to delve into interlocking defined terms. As the definition of "hazardous waste" set out above makes clear, a hazardous waste must be a "solid waste." *See* 42 U.S.C. § 6903(27). A "solid waste" is defined as:

[A]ny garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33, or source, special nuclear, or by-product material as defined by the Atomic Energy Act. . . .

42 U.S.C. § 6903(27). A "point source" is defined in the Clean Water Act as:

[A]ny discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and return flows from irrigated agriculture.

33 U.S.C. § 1362(14). Dean argues that the lagoon was a point source, because discharges into a nearby watercourse occurred, and therefore he was not properly indicted under RCRA for discharges into the lagoon.

The government points out that EPA regulations further define the distinction between the jurisdiction of RCRA and the Clean Water Act:

This exclusion [from RCRA's "solid waste" definition] applies only to the actual point source discharge. It does not exclude industrial wastewaters while they are being collected, stored or treated before discharge, nor does it exclude sludges that are generated by industrial wastewater treatment.

40 C.F.R. § 261.4(a)(2) cmt. The meaning of the regulation is that it is only the actual discharges from a holding pond or similar feature into surface waters which are governed by the Clean Water Act, not the contents of the pond or discharges into it. Count 4 charged that Dean "did knowingly store and dispose of and cause the storage and disposal of hazardous waste, to wit: chromic acid rinse water and wastewater sludges from the coating of aluminum in an open lagoon." This accords with the distinction drawn by the regulation.

*United States v. Earth Sciences, Inc.*, 599 F.2d 368, 373–74 (10th Cir.1979), upon which defendant relies, supports this reading of the regulation. In that case, the indictment was brought under the Clean Water Act on the basis of discharges from Earth Sciences' sump into a nearby stream. Earth Sciences' discharges into the sump, and the actual contents of the sump, are not addressed in the decision. The case is therefore consistent with our construction of the relationship between the statutes.

### III.

Defendant asserts that various counts of the indictment are duplicitous, multiplicitous, or vague. Defendant's contention that the indictment was vague is baseless. The indictment in this case bears no resemblance to the indictment at issue in *United States v. Russell*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), upon which Dean relies. Although the conspiracy count necessarily contained lengthy allegations, each of the other counts dealt with a discrete time and place of disposal and specific hazardous chemicals. The number of possible permutations of the facts under which defendant could have been convicted on each count was small, and certainly could not, as in *Russell*, be said to leave the

prosecution "free to roam at large." *Id.* at 768, 82 S.Ct. at 1049.

■ Defendant's claim that counts of the indictment were duplicitous is likewise without merit. The claimed duplicity lies in the fact that in several instances Dean was charged in a single count with violating the statute as a principal, aiding and abetting, and causing a violation of the statute. In addition, Dean points to the fact that individual counts reference several hazardous substances, and charge "storage" as well as "disposal."

Federal Rule of Criminal Procedure 8(a) provides by implication that each offense must be charged in a separate count of the indictment.[1] Federal Rule of Criminal Procedure 7(c), however, states that "[i]t may be alleged in a single count that ... the defendant committed [the offense] by one or more specified means."

■ As to Count 4, stating that defendant "stored and disposed" of hazardous waste, an indictment is not duplicitous because means of committing the offense which are stated in the disjunctive in the statute, as here, are charged in the conjunctive in the indictment.[2] *Crain v. United States,* 162 U.S. 625, 632–36, 16 S.Ct. 952, 954–55, 40 L.Ed. 1097 (1896); *Turner v. United States,* 396 U.S. 398, 420 n. 42, 90 S.Ct. 642, 654 n. 42, 24 L.Ed.2d 610 and accompanying text (1970). The conviction may be upheld upon proof of either of the alternative means of committing the offense. *Turner,* 396 U.S. at 420, 90 S.Ct. at 654.

Each of the aspects of the indictment to which defendant points falls within Rule 7(c) rather than being an instance of duplicity in violation of Rule 8(a). It is not

duplicitous (triplicitous?) to encompass principal liability and liability for aiding and abetting in the same count, nor to combine an allegation that the defendant "caused" a violation of the statute with these two. We note that a model indictment contained from 1949 to 1983 in the Appendix of Forms, Model Form 4, of former Federal Rule of Criminal Procedure 58, included the recitation that an illegal device was "made and caused to be made."[3] The jury was instructed to reach unanimous agreement on each of the elements of the crimes.

■ Even if it were the case that charging storage and disposal in a single count was duplicitous, rather than a matter of form, we would find harmless error in light of the fact that there can be no question on the facts of this case whether the jury reached a unanimous verdict on Count 4, relating to the lagoon. *United States v. Baytank (Houston), Inc.,* 934 F.2d 599, 609 (5th Cir.1991). As noted above, RCRA's definitions of the terms "disposal" and "storage" are mutually exclusive, the distinction being that if environmental contamination may result from the manner in which the hazardous waste is contained, it is a "disposal" and not "storage." 42 U.S.C. §§ 6903(3), 6903(33). No rational juror could have concluded that the draining of the hazardous chemicals onto the earth, as here, was "storage" as defined in the statute.

■ Defendant asserts that Counts 3 and 4 of the indictment were multiplicitous—that a single offense was charged in two counts. He bases this contention on the fact that both counts charged Dean with illegal storage of chromic acid. As we

---

1. The Rule provides:

   Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
   Fed.R.Crim.P. 8(a).

2. One court of appeals has stated that pleading in this manner is a requirement in order to fully inform the accused of the charge. *United States v. DePuew,* 889 F.2d 791 (8th Cir.1989).

3. Former Rule 58 and the Appendix of Forms were deleted from the Rules in 1983 on grounds that they were "unnecessary" because "[f]orms of indictment and information are made available to United States Attorneys' Offices by the Department of Justice." Appendix of Forms, advisory committee's note.

have noted, although Count 4 tracks the language of the statute, there was no question but that the offense was predicated upon *disposal* of hazardous waste. More importantly, however, Counts 3 and 4 are factually distinct, even if one fact—the presence of chromic acid—is the same. Count 3 dealt with the storage of spent solution in drums in the GMF facility, while Count 4 dealt with the disposal of the waste rinse water in the lagoon. While it might be multiplicitous if an indictment included a separate count for each barrel of hazardous wastes found stored together at a facility, since it is doubtful if Congress intended separate punishments in such a case, there is every reason to conclude that separate punishments on the basis of the separate behavior at issue in Counts 3 and 4 are appropriate.

### IV.

Defendant's further assignments of error have no merit, and we shall address each briefly. We are not in agreement with Dean's contention that his motion for acquittal should have been granted based on insufficient evidence concerning various elements of the crimes, including the existence of an agreement for purposes of the conspiracy count, Dean's knowledge of record-keeping obligations imposed by law, whether the stored chromic acid was "waste," the presence of aluminum sludges in the lagoon, defendant's awareness that chromic acid was reaching the lagoon, and defendant's responsibility for construction of the pit and the hazardous waste dumping there. We are satisfied upon review of the record in the light most favorable to the prosecution that a rational juror could find beyond a reasonable doubt that these elements were proven. *Jackson v. Virgi-*

*nia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Dean also assigns as error two evidence rulings of the district court, declining to instruct the jury to disregard testimony of Agent Klotz, and admitting deposition testimony of Les Stewart. Stewart, a chemical salesperson, was able to recall very little relevant information, as a result of undergoing chemotherapy, when he was deposed immediately prior to trial. The portion of his deposition to which the relevancy objection at issue was made was harmless error at most, in light of the fact that nothing prejudicial to defendant's case was elicited.

Agent Klotz' testimony presents a more serious question, but one which we again conclude amounts only to harmless error. Agent Klotz testified to statements made by Stewart prior to chemotherapy concerning conversations with defendant and his co-conspirators. No timely objection to the testimony was made, and defendant did not submit the written motion ordered by the district court, which might have drawn the attention of the court to the specific nature of the error. The proposed instruction to the jury to disregard the evidence which was submitted to the court by defendant raised only the fact that the alleged conversations occurred prior to the dates charged in the indictment. However, the conversations were admissible as evidence of defendant's knowledge. Fed. R.Evid. 404(b); *cf. United States v. Sellers,* 926 F.2d 410, 413–14 (5th Cir.1991).

We agree that defendant's hearsay objection had merit. It does not reflect well upon the prosecution that Agent Klotz' testimony was presented.[4] However, defendant's hearsay objection was untimely and subsequently was not raised in writing as the court requested. On balance, we be-

---

**4.** The prosecution argues that Klotz' testimony was not hearsay, asserting that Stewart was unavailable. None of the four exceptions to the hearsay bar when the declarant is unavailable has any application in this case, however, Fed. R.Evid. 804(b), nor was deposition testimony at issue for purposes of Fed.R.Civ.P. 32(a)(3). The prosecution also appears to argue that the residual hearsay exception, Fed.R.Evid. 803(24), 804(b)(5), is applicable, on grounds that there

were circumstantial guarantees of trustworthiness in Stewart's statements. Had Stewart testified, however, his testimony would have been excepted from the hearsay bar because it involved admissions. The testimony at issue implicated the hearsay bar on two levels; the prosecution neglects to point to the circumstantial guarantees of trustworthiness in Agent Klotz' own testimony, and none are immediately apparent.

lieve that it can be said "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error...." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Other evidence amply illustrated defendant's wanton and willful disregard of his known duties under RCRA. Klotz' testimony was prejudicial, but other properly admitted evidence was equally so, such as defendant's admission concerning the RCRA waste code contained in the MSDS, quoted above. We conclude that substantial rights of the defendant were not affected by admission of the testimony. Fed. R.Crim.P. 52.

■ Defendant assigns as error the enhancement of his sentence on the ground that he had an aggravating role in the crime. His sentence was enhanced pursuant to § 3B1.1(b) of the Guidelines Manual, which applies when the defendant is "a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive ..." United States Sentencing Commission, *Guidelines Manual*, § 3B1.1(b) (Nov. 1991). Defendant argues that the enhancement was error because there was evidence that, at most, he supervised only two persons.

This contention mistakes the language of the Guideline, which refers not to "subordinates" but to "participants," thus encompassing those on an equal footing or superior to defendant in a criminal hierarchy as well as those below. In addition to defendant and the two employees concededly involved, the owners and Griffith are also relevant for purposes of the Guideline. Accordingly, there were five or more participants in the offense, and the district court did not err in enhancing defendant's sentence on this ground.

Finally, defendant asserts that the district court erred in refusing to give his proposed jury instructions. "In examining jury instructions, 'the critical inquiry is whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried.'" *Litteral v. Bach*, 869 F.2d 297 (6th Cir.1989) (quoting *Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799, 802 (6th Cir.1984)). Defendant's proposed instructions incorporated defendant's statutory arguments, discussed above. As we have concluded that several of those statutory arguments were in error, and the district court's instructions adequately informed the jury of the nature and elements of the offenses, we conclude that the district court did not err in refusing to give defendant's proposed jury instructions.

AFFIRMED.