653 So.2d 459 (1995)
STATE of Florida, Appellant,
v.
Joseph DELGRASSO, Appellee.
No. 94-00092.
District Court of Appeal of Florida, Second District.
April 7, 1995.
*461 Robert A. Butterworth, Atty. Gen., Tallahassee, Consuelo Maingot, Asst. Atty. Gen., Miami, and Francis John Migliore, Jr., Asst. State Atty., Clearwater, for appellant.
James W. O'Neill, Gulfport, for appellee.
QUINCE, Judge.
The state appeals two orders of the trial court entered after a jury convicted the appellee, Joseph Delgrasso, of illegally storing or disposing of hazardous waste. The trial court granted appellee's motion for judgment of acquittal and appellee's motion to dismiss. We reverse because section 403.727, Florida Statutes (1991), is not vague or ambiguous. We further hold the evidence was sufficient to convict appellee of the charged offense, and he is in the class of persons affected by the statute.
On May 21, 1991, the Largo Fire Department was called to a mobile home park in St. Petersburg, Florida, to investigate a possible hazardous waste spill. When they arrived at the scene, the Lealman Fire Department was in the process of evacuating park members. The fire units reported odor and vapors in the neighborhood, as well as sick people. There were several barrels or drums present which were determined to be flammable and toxic. Three drums were located and tested on the premises. A preliminary determination was made that one drum contained a petroleum product and one a ketone based solvent with a flashpoint that made it more ignitable than gasoline.
The Department of Environmental Regulation (DER) was notified of the situation. DER removed a total of seven barrels from the mobile home park; three of the barrels contained liquids. The drums were tested by a laboratory, with one testing as hazardous waste with a flashpoint of one hundred twenty-two degrees fahrenheit and consisting of such products as ethylbenzene, toluene and xylene. This drum was one of two located at the rear of the mobile home occupied by Mary Cinquegrana and her eight children. The second drum found behind Mrs. Cinquegrana's unit had a flashpoint of one hundred forty degrees fahrenheit.
The resident manager of the mobile home park, Floyd Shaffer (Shaffer), testified he had on at least a half dozen occasions notified appellee that the barrels on the property needed to be removed and that the odor emanating from the barrels was making residents sick. The barrels had been placed on the property by the former park manager. Appellee asked Shaffer to make some inquiries concerning disposal of the barrels, and Shaffer determined there was a team in Orlando that was qualified to take care of toxic waste and so informed appellee.
Shaffer further testified the area behind the unit where the two barrels were located was black muck where nothing would grow. One of the barrels there had a hole in it; when it would rain the barrel would fill with water and spew out some of the material. When the sun came out and heated it, it would emit an awful smell. Some of the *462 residents would complain of headaches and sickness. This situation was explained to appellee on more than one occasion.
On May 21, Shaffer and his family were among those evacuated from the park. He lost consciousness, his wife was nauseated, and his son was having headaches and a sick stomach. He observed other residents of the park being evacuated to the hospital with complaints of headaches and sick stomachs. Mary Cinquegrana and her children were also evacuated and treated at Humana Northside Hospital. Two of her children were suffering from dizziness, headaches, and diarrhea. She observed other residents of the park being treated at the hospital that night.
Mrs. Cinquegrana indicated the two barrels at the rear of her trailer were there when she moved into the unit. The barrels smelled like nail polish remover. The barrels had a crusty substance on top and appeared to be leaking. The smell was overwhelming and one could not stay in her girls' bedroom for long periods because the odor would make one sick to the stomach. This odor was always worse when it rained. At one point she had to close off the bedrooms in the back of the trailer; the children could not sleep there without getting headaches and being nauseous. She asked appellee to remove the barrels, and he assured her he was trying.
Lt. Fowler testified he spoke with the appellee concerning the situation at the park. Appellee indicated he was cleaning up the property but did not know what was in the large barrels. He refused to accompany Fowler to the property to assist with the cleanup. Appellee stated the situation was contrived by the residents to avoid paying their rents.
Appellee was charged by information with a violation of section 403.727, Florida Statutes (1991), unlawfully disposing of or storing hazardous waste at a place other than a validly permitted hazardous waste facility and by so doing exhibiting reckless indifference or gross careless disregard for human health. A second count charged him with inflicting actual personal injury through culpable negligence in violation of section 784.05, Florida Statutes (1991). The trial judge granted a motion for judgment of acquittal as to the culpable negligence count, and the jury found appellee guilty of the violation of section 403.727.
On October 12, 1993, after the verdict was pronounced, the defense made a motion for judgment notwithstanding the verdict arguing that appellee was not in the class of persons covered by the statute. A written motion to dismiss and memorandum of law attacking the constitutionality of the statute because facility owner is not defined, because appellee is not in the class covered by the statute, and because the civil and criminal procedures and defenses are not adequately separate, was filed on October 25, 1993. The defense also filed a written motion for judgment of acquittal on the same day.
The trial court, on December 20, 1993, granted appellee's motion for judgment of acquittal, and his motion to dismiss, finding the statute unconstitutional for failing to define facility owner and failing to distinguish the civil and criminal procedures. The state timely filed a notice of appeal.
We first address the trial court's determination, on a posttrial motion to dismiss, that the statute is unconstitutionally vague and ambiguous because it does not adequately define "facility owner" and does not distinguish between the procedures and penalties for civil infractions and criminal penalties. In analyzing this statute, we begin with the premise that statutes are presumed constitutional. State v. Wilson, 464 So.2d 667 (Fla. 2d DCA 1985). The legislature has the power to prohibit any act, determine the class of an offense, and prescribe the punishment. State v. Bailey, 360 So.2d 772 (Fla. 1978). When reasonably possible and consistent with constitutional rights, all doubts should be resolved in favor of the validity of the act. State v. Wershow, 343 So.2d 605 (Fla. 1977).
A legislative enactment will not be declared vague unless the statute fails to give persons of ordinary intelligence fair notice of what constitutes the forbidden conduct and which, because of imprecision, may invite arbitrary and discriminatory enforcement. *463 Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Southeastern Fisheries Ass'n, Inc. v. Dep't of Natural Resources, 453 So.2d 1351 (Fla. 1984). If the language of the statute, when measured by common understanding and practice, conveys a sufficiently definite warning of what conduct is proscribed it should not be found unconstitutionally vague. Brown v. State, 629 So.2d 841 (Fla. 1994).
The trial court found the Resource Recovery and Management Act, part IV of chapter 403, unconstitutional because the act failed to adequately define the term "facility owner." Section 403.703(24), Florida Statutes (1991), defines a hazardous waste facility as "any building, site, structure, or equipment at or by which hazardous waste is disposed of, stored or treated." The term "owner" is not defined in the statute. When a word of common usage such as "owner" is not defined, it should be given its plain and ordinary meaning. State v. J.H.B., 415 So.2d 814 (Fla. 1st DCA 1982). Owner means "the person in whom is vested the ownership, dominion, or title of property; proprietor." See Black's Law Dictionary 1105 (6th ed. 1990). The term is also defined in Webster's Third New International Dictionary (1986) as one that has the legal or rightful title whether the possessor or not. Reading the terms "facility" and "owner" in pari materia, it is readily apparent that a facility owner is one who is vested with ownership, dominion or legal or rightful title to any building, site, structure or equipment used to dispose of, store or treat hazardous waste.
The trial court erred in finding the statute unconstitutional for failing to define the term facility owner. The term is sufficiently defined when measured by common usage and understanding to convey to persons of ordinary intelligence who is included in its term.
The trial court also erred in finding the statute unconstitutional for failing to distinguish between the procedures and penalties for civil infractions and criminal penalties. This conclusion by the trial court fails to take into account other provisions of chapter 403, provisions that are cited to in section 403.727, which outline in more detail the procedures for civil and administrative enforcement for violations of the act. See §§ 403.121, 403.131 and 403.141, Fla. Stat. (1991). Section 403.727 must be read in conjunction with the other enforcement provisions and the overall regulatory scheme. The statute is not unconstitutional for failing to distinguish civil and criminal penalties.
We also reverse the trial court's granting of the defendant's motion for judgment of acquittal. Appellee was charged in an amended information with illegal storage of hazardous waste, contrary to section 403.727(3)(b)2.a., Florida Statutes. This subsection provides in pertinent part:
403.727. Violations; defenses, penalties, and remedies. 
....
(3) Violations of the provisions of this act are punishable as follows:
....
(b) Any person who knowingly or by exhibiting reckless indifference or gross careless disregard for human health:
....
2. Disposes of, treats, or stores biohazardous or hazardous waste:
a. At any place but a hazardous waste facility which has a current and valid permit pursuant to s. 403.722 or, with regard to biohazardous waste, at any place except a facility that has a current and valid permit for the disposal or storage of biohazardous waste;
After a jury trial, appellee was convicted as charged in the information.[1] The trial court granted a posttrial motion for judgment of acquittal finding the "defendant did not exhibit any conduct which could be considered recklessly indifferent or gross careless regard for human health."
A motion for judgment of acquittal after the jury verdict should only be granted if the verdict cannot be supported by the evidence. If the evidence is reasonably *464 susceptible of supporting the verdict, a motion for judgment of acquittal must be denied. Where the state has produced substantial competent evidence to support each element of the offense charged, a judgment of acquittal should not be granted. Brown v. State, 294 So.2d 128 (Fla. 3d DCA 1974). In the instant case, there was evidence to support the jury verdict, and the motion for judgment of acquittal should have been denied.
Residents at the mobile home park testified they informed the owner of the problems associated with the barrels that were stored on the property. The resident manager of the park told the owner at least a half dozen times beginning in September 1989 that the three barrels needed to be removed from the property because when it rained some of the substance in the barrels would spew out. Once the sun came out and heated the substance an awful smell was emitted, and the residents would complain of headaches and sickness. The manager told the owner of an Orlando team that was qualified to remove the barrels. No action was taken by the owner to remove them.
The owner was on notice for at least a year and a half prior to the May 1991 incident at the mobile home park that there was a problem with the drums located on his property. He knew that the barrels contained a product which was noxious enough to make the residents sick. This evidence was sufficient for a jury to find that appellee, the owner, allowed the barrels to be stored on his property with reckless indifference or gross careless disregard to the health of the tenants at the mobile home park.[2]
Additionally, we find appellee is in the class of persons affected by the statute. One purpose of the Resource Recovery and Management Act is to ensure that hazardous and biohazardous waste is transported, stored, treated and disposed of in a manner adequate to protect the public health, safety and welfare. See § 403.702, Fla. Stat. (1991). To achieve this end, the legislature has deemed it appropriate that subsection (3) of section 403.727 apply to "any person." A person is defined in section 403.703(4) as any and all persons, natural or artificial, including any individual, firm or association. Accord United States v. Dean, 969 F.2d 187, 192 (6th Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1852, 123 L.Ed.2d 475 (1993); United States v. Dee, 912 F.2d 741 (4th Cir.1990), cert. denied, 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991). Unlike, subsection (1), which by its term is applicable to biohazardous or hazardous waste generators, transporters, or facility owners or operators only, any person can violate subsection (3) by improperly transporting, storing, treating or disposing of biohazardous or hazardous waste. Since appellee was charged and convicted under subsection (3), he is in the class of persons affected by the statute. The trial court erred in granting the motion for judgment of acquittal. We reverse that order and remand with instructions to reinstate the jury verdict.
Reversed and remanded for further proceedings consistent with this opinion.
RYDER, A.C.J., and PATTERSON, J., concur.
NOTES
[1] The culpable negligence count of the information was the subject of a judgment of acquittal entered prior to submission to the jury and is not a part of this appeal.
[2] The mobile home park is not a biohazardous or hazardous waste facility and does not have a permit for the storage, treatment or disposal of biohazardous or hazardous waste.