# STATE OF VERMONT

# ENVIRONMENTAL COURT

Secretary, Vermont
Agency of Natural
Resources,  Plaintiff,    }   Docket No. 41-2-02
         }   Vtec
v.         }
         }   (Stage II Vapor
Mountain Valley     }   Recovery)
Marketing, Inc., ,
Respondents


Secretary, Vermont
Agency of Natural
Resources,  Plaintiff,    }   Docket No. 278-12-02
         }   Vtec
         }
v.         }   (Stage II Vapor
         }   Recovery)
Premium Petroleum,
Inc.,  Respondents


Secretary, Vermont
Agency of Natural
Resources,  Plaintiff,
         }   Docket No. 176-8-02
v.         }   Vtec
         }
Premium Petroleum, Inc, }   (Stage I Vapor
Odessa Corp.,      }   Recovery)
Timberlake Associates,
and Wesco, Inc.,
Respondents


Secretary, Vermont    }   Docket No.  175-8-02
Agency of Natural     }   Vtec
Resources,  Plaintiff,   }
         }   (Hazardous Waste

|                                          | }        | Management   |
| v.                                       | }        | Regulations) |

Premium Petroleum, Inc,
Odessa Corp.,
Timberlake Associates,
and Wesco, Inc.,
Respondents

## Decision and Order on Motions for Summary Judgment - Constitutional Grounds

In Docket No. 41-2-02 Vtec on January 24, 2002, the Secretary of the Vermont Agency of Natural Resources (ANR) issued an administrative order pursuant to 10 V.S.A. ' 8008 regarding Respondent Mountain Valley Marketing, Inc., which timely requested a hearing in Environmental Court. This administrative order alleged violations of the Air Pollution Control Regulations regarding Stage II Vapor Recovery. In Docket No. 278-12-02 Vtec on November 26, 2002, the Secretary of the Vermont Agency of Natural Resources (ANR) issued another administrative order pursuant to 10 V.S.A. ' 8008 also alleging violations of the Stage II Vapor Recovery Regulations regarding Respondent Premium Petroleum, Inc., which also timely requested a hearing in Environmental Court.

In Docket No. 176-8-02 Vtec, on July 31, 2002 the Secretary of the Vermont Agency of Natural Resources (ANR) issued an administrative order pursuant to 10 V.S.A. ' 8008 regarding Respondents Premium Petroleum, Inc, Odessa Corp., Timberlake Associates, and Wesco, Inc., which timely requested a hearing in Environmental Court. This administrative order alleged violations of the Air Pollution Control Regulations regarding Stage I Vapor Recovery.

In Docket No. 175-8-02 Vtec, on July 31, 2002 the Secretary of the Vermont Agency of Natural Resources (ANR) issued an administrative order pursuant to 10 V.S.A. ' 8008 regarding Respondents Premium Petroleum, Inc, Odessa Corp., Timberlake Associates, and Wesco, Inc., which timely requested a hearing in Environmental Court. This administrative order alleged violations of the Hazardous Waste Management Regulations regarding exempt and small-quantity generators of hazardous waste.

In all the above-captioned cases, all Respondents (which are all related corporations or entities) are represented by Jon Anderson,

Esq., William E. Simendinger, Esq. and Kathryn Sarvak; and the Agency of Natural Resources is represented by Catherine Gjessing, Esq.

Applicability of Summary Judgment procedure

The Secretary first argues that V.R.C.P. 56, providing for summary judgment, does not apply to proceedings under 10 V.S.A. Chapter 201. V.R.C.P. 76(a)(3). The Secretary is correct that V.R.C.P. 56 summary judgment does not apply, but the Court may provide for the A disposition of legal issues prior to the hearing@ as it has done in these cases, by allowing the filing of memoranda analogous to motions for summary judgment. V.R.C.P. 76(d)(3)(D).

Nondelegation Doctrine

Respondents argue that they are entitled to judgment as a matter of law because all the regulations under which the above-captioned administrative orders were issued were adopted under statutes that violate the doctrine of separation of powers between the legislative and the executive branches of government, in that the statutes delegate legislative power to the Agency of Natural Resources without adequate standards to guide its use, and also violate the constitutional principles of due process and equal protection.

First it is necessary to point out that administrative agencies such as the Agency of Natural Resources carry out at least two distinct functions in our modern system of government: rulemaking functions and adjudicative functions. The function challenged in the present cases is the rulemaking or quasi-legislative function. The function challenged in several of the cases relied upon by Respondents, notably In re Handy, 171 Vt. 336 (2000), is the adjudicative or quasi-judicial function.

The adjudicative function, whether exercised by a court, an administrative tribunal, a municipal zoning board, or, as in Handy, the legislative body of the town considering a permit application in place of the zoning board, must be exercised based on objective standards, whether found in regulations or in state statute or local ordinance, simply to avoid the arbitrary exercise of the adjudicator= s discretion. In Handy, the zoning enabling statute and the particular municipality= s zoning ordinance presented the necessary objective standards for a zoning board (or the court in a de novo appeal) properly to adjudicate whether a particular permit applicant should be granted a permit.

However, during the period during which a new zoning regulation had been proposed but was not yet effective, the zoning enabling statute transferred the permit-issuing authority to the selectboard, but without any objective standards at all (that is, without directing the selectboard to apply the old zoning ordinance, to apply the proposed ordinance amendment, or to apply the standards for approval of a conditional use.) It was the state statute that was held to be unconstitutional in Handy, for its complete lack of guiding standards; that statute was later amended to correct the problem by requiring the use of the proposed ordinance amendment as of the date on which the proposed ordinance amendment was noticed for public hearing. 24 V.S.A. ' 4443(d) (as amended).

By contrast, in the present cases Respondents do not challenge whether the regulations adopted by the Agency of Natural Resources provide sufficient objective standards for an adjudicative decision to be made about Respondents= behavior under those regulations. Rather, Respondents argue that the enabling statutes do not provide sufficient guidance to the Agency for it properly to have produced those objective standards in the regulations.

Other than two cases[1] decided by the United States Supreme Court in 1935, in the context of extensive government intervention in the economy during the Great Depression, the U.S. Supreme Court has not invalidated statutory delegations of rulemaking power to administrative agencies, and, indeed, has overturned lower federal court decisions which had attempted to follow those two cases[2].

Rather, the U.S. Supreme Court has consistently applied the test of whether the enabling statute sets out an A intelligible principle@ to guide the exercise of administrative rulemaking authority. See discussion of the history of this test in Whitman v. American Trucking Assns., Inc., 531 U.S. 457, 472-476 (2001); and in Richard J. Pierce, Jr. Administrative Law Treatise[3], ' 2.6 at pp. 86-107 (2002). The Court has A almost never felt qualified to second-guess [the legislature] regarding the permissible degree of policy judgment that can be left to those executing or applying the law.@ Whitman, 531 U.S. at 474-75, quoting Justice Scalia= s dissent in Mistretta v. United States, 488 U.S. 361, 416 (1989). In the Whitman case, the Court found the scope of discretion allowed to the federal Environmental Protection Agency by ' 109(b)(1) of the federal Clean Air Act to be A well within the outer limits of our nondelegation precedents.@ Whitman at 474.

Section 109(b)(1) of the federal Clean Air Act required the federal EPA to set ambient air quality standards which, A in the judgment of the Administrator,@ based on criteria documents required under ' 108 and A allowing an adequate margin of safety,@ are A requisite to protect the public health.@

The Court in <u>Whitman</u> noted (at p. 475) that the greater the power conferred on the agency, the more restrictive the acceptable degree of agency discretion, but that even in > sweeping regulatory schemes= the statute is not required to define how much of the regulated harm is too much. That is, the statute is not required to state how > imminent= is too imminent, or how > necessary= is sufficiently necessary, or how > hazardous= is too hazardous, or, as in <u>Whitman</u>, what is the > requisite= level is, that is, neither too high nor too low, to protect the public health with an adequate margin of safety.

In Vermont, equally, the legislature must avoid unconstitutional delegations of legislative authority to administrative agencies. <u>Vincent v. Vermont State Retirement Board</u>, 148 Vt. 531, 535 (1987). The Vermont Supreme Court in that case noted that the A enabling legislation of virtually every administrative agency must include a certain degree of discretion given to the administrative agency to deal with issues unforeseen by its creators@ and that A such discretion may be delegated by the legislature, but that it A must not be > unrestrained and arbitrary.= @ [Citations omitted.] The Court required that A the entire statute must be examined to determine whether the discretion afforded an administrative agency is sufficiently defined so as to warrant noninterference by this Court.@ <u>Id.</u>,148 Vt. at 535.

<u>Air Pollution Control Regulations - Stage II and Stage I Vapor Recovery</u>

Both the Stage I and Stage II Vapor Recovery regulations were adopted by the Vermont Agency of Natural Resources pursuant to Vermont= s Air Pollution Control Act, 10 V.S.A. Chapter 23, and in particular its ' 558. The Stage I Vapor Recovery regulations regulate the recapture of vapors from in-ground gasoline storage tanks when those tanks are refilled from bulk tanker trucks. The Stage II Vapor Recovery regulations regulate the recapture of vapors from individual vehicle gasoline tanks into those in-ground gasoline storage tanks when the individual vehicles are refueled. Both regulations are emission control requirements; that is, even though they do not set a numerical level for acceptable levels of emissions, they do operate to regulate the release into the outdoor atmosphere of gasoline vapor,

which in turn falls within the definition of > air contaminant.= 10 V.S.A '' 552(2) and (5).

Section 558 provides in full that:

The secretary may establish such emission control requirements, by rule, as in his judgment may be necessary to prevent, abate, or control air pollution. The requirements may be for the state as a whole or may vary from area to area, as may be appropriate to facilitate accomplishment of the purposes of this chapter, and in order to take necessary or desirable account of varying local conditions.

The legislature= s A declaration of policy and purpose@ regarding Vermont= s Air Pollution Control Act further provides in ' 551(a) that it is the A public policy of this state and the purpose of this chapter to achieve and maintain such levels of air quality as will protect human health and safety, and to the greatest degree practicable, prevent injury to plant and animal life and property, foster the comfort and convenience of the people, promote the economic and social development of this state and facilitate the enjoyment of the natural attractions of this state.@ Section 558 alone states a sufficiently intelligible principle: that the Secretary is to promulgate regulations setting emission control requirements which will have the result of preventing, abating, or controlling air pollution. When the statute is read as a whole, that is, when ' 551(a) is applied to it, the statute provides an > intelligible principle= to guide the Agency= s discretion sufficient to uphold the statute against challenge on the basis of the nondelegation doctrine and the constitutional principles of due process and equal protection.

Hazardous Waste Management Regulations

Vermont= s Hazardous Waste Management Regulations were adopted under the authority of the state= s Waste Management Act, described as follows by the Vermont Supreme Court in State of Vermont v. Ben-Mont Corporation, 163 Vt 53, 57-58 (1994):

Vermont= s Waste Management Act, 10 V.S.A. chapter 159, was enacted to address the increasingly complex social, economic and legal problems of managing solid and hazardous wastes. 10 V.S.A. ' 6601 ; see also Note, Solid Waste Source Reduction and the Product Ban: A Commerce Clause Violation?, 13 Vt. L. Rev. 691, 696-98 (1989) (describing history of Vermont= s solid waste management legislation). Chapter 159 was modeled after and enacted to comply with the

Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. ' ' 6901-6991, chapter 82 (Solid Waste Disposal). See Note, <u>supra</u>, at 696 (discussing enactment of chapter 159 in response to RCRA). Like RCRA, chapter 159 outlines a comprehensive cradle-to-grave scheme for managing the generation, treatment, storage, transportation and disposal of waste. See <u>United States v. Johnson & Towers. Inc.</u>, 741 F.2d 662, 666 (3d Cir. 1984) (describing scope and purpose of RCRA). Both RCRA and chapter 159 rely heavily on environmental agencies to implement their statutory goals. Compare 10 V.S.A. ' 6603(1) (secretary has authority to promulgate rules to implement purpose of statute) with 42 U.S.C. ' 6907 (same); and 10 V.S.A. ' 6610 (secretary of agency authorized to enforce compliance) with 42 U.S.C. ' 6928 (a) (same).

Respondents argue that the Vermont Waste Management Act only allows the Agency to impose the requirements of Subchapter 7 of the Hazardous Waste Management Regulations by way of issuing a permit under 10 V.S.A. ' 6606; that the Agency cannot impose those regulations on a generator of hazardous waste exempt from the requirements of obtaining a ' 6606 permit; and that the legislature has established no standards for the enactment of the Subchapter 7 rules.

Section 6604(a) requires the Secretary of the Agency of Natural Resources to adopt a comprehensive solid waste management plan for the state. With respect to the subset of solid waste that is hazardous, ' 6604(b) provides additional specific authority for the Secretary to:

manage the hazardous wastes generated, transported, treated, stored or disposed in the state by administering a regulatory and management program which, at a minimum, meets the requirements of subtitle C of the Resource Conservation and Recovery Act of 1976, and amendments thereto, codified as 42 U.S.C. chapter 82, subchapter 3, and the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended.

By authorizing Vermont=s Agency of Natural Resources to manage hazardous wastes through a Aregulatory@ program, this section authorizes it to adopt regulations. Further, by adopting by reference the regulatory requirements of two specific federal laws, ' 6604(b) provides ample authority and a specific intelligible principle to guide the Agency= s rulemaking process. The Vermont legislature specifically directed the Agency of Natural Resources to adopt regulations to create a program which at a minimum was consistent with subtitle C of RCRA (dealing with hazardous waste management) and with CRCLA. It

did so to ensure that Vermont could operate its regulatory program within the state and avoid the preemption of that program by the federal Environmental Protection Agency. See Note, <u>supra</u>, 13 Vt. L. Rev. 691(1989). The provisions of Subchapter C of RCRA, 42 U.S.C. '' 3001 <u>et</u> <u>seq.</u>, and in particular the provisions of ' 3001(d), provide specific guidance for the Vermont Agency=s adoption of the Subchapter 7 Waste Management Regulations at issue in the present case.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Respondents= motions for judgment as a matter of law on constitutional issues are DENIED. We will hold a further telephone conference under V.R.C.P. 76(d)(3)(D) on July 23, 2003 to discuss whether and when these matters may be set for trial. (Please see enclosed conference notice and two other orders issued this date in the above-captioned cases.)

Done at Barre, Vermont, this 7th day of July, 2003.


_____
Merideth Wright
Environmental Judge

---

## Footnotes

1. <u>Panama Refining Co. v. Ryan</u>, 293 U.S. 388 (1935) and <u>A.L.A. Schechter Poultry Corp.</u>, 295 U.S. 495 (1935); see discussion in Richard J. Pierce, Jr. <u>Administrative Law Treatise</u>, §2.6 at pp. 91-92 (2002).


2. See, <u>e.g.</u>, <u>Fahey v. Mallonee</u>, 332 U.S. 245 (1947), discussed in Richard J. Pierce, Jr. <u>Administrative Law Treatise</u>, §2.6 at p. 93 (2002).

3. This current treatise is by the same commentator who wrote the 1985 article cited by Respondents. The treatise describes the current status of the field of administrative law, while the 1985 article proposed an alternative theory to apply to the nondelegation

problem: judicial deference to increased Presidential control of agency policy-making, to insure that policy-making power be vested in an elected official. This is an interesting theory, but does not describe the current state of either federal or Vermont administrative law some seventeen years after it was written.